# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

YOLANDA VALLE AND ANA C. BURGOS, Case No.

    *Plaintiffs*,               (Cir. Ct. Case No. 23-CA-010008)

v.

SCOTTSDALE INSURANCE COMPANY,

    *Defendant*.

_____/

**COPIES OF ALL PROCESS, PLEADINGS AND ORDERS,
SERVED WITH THE COMPLAINT, IN THE CIRCUIT COURT OF THE
TWENTIETH JUDICIAL CIRCUIT, LEE COUNTY, FLORIDA SERVED IN
THE STATE PROCEEDINGS**

**EXHIBIT "A"**



**null / ALL**
**Transmittal Number: 27605956**
**Date Processed: 09/08/2023**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | SOP Team nwsop@nationwide.com<br>Nationwide Mutual Insurance Company<br>Three Nationwide Plaza<br>Columbus, OH 43215-2410 |
| **Electronic copy provided to:** | Ashley Roberts |

| | |
|---|---|
| **Entity:** | Scottsdale Insurance Company<br>Entity ID Number  3286058 |
| **Entity Served:** | Scottsdale Insurance Company |
| **Title of Action:** | Yolanda Valle and Ana C. Burgos vs. Scottsdale Insurance Company |
| **Matter Name/ID:** | Yolanda Valle and Ana C. Burgos vs. Scottsdale Insurance Company<br>(14572344) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Lee County Circuit Court, FL |
| **Case/Reference No:** | 23-CA-010008 |
| **Jurisdiction Served:** | Florida |
| **Date Served on CSC:** | 09/08/2023 |
| **Answer or Appearance Due:** | 20 Days |
| **Originally Served On:** | FL Chief Financial Officer on 9/6/2023 |
| **How Served:** | Electronic SOP |
| Sender Information: | Your Insurance Attorney, PLLC<br>N/A |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

*23-000445370*

**CHIEF FINANCIAL OFFICER**
**JIMMY PATRONIS**
STATE OF FLORIDA

YOLANDA VALLE AND ANA C. BURGOS

PLAINTIFF(S)

VS.

SCOTTSDALE INSURANCE COMPANY

DEFENDANT(S)

_____/

SUMMONS, COMPLAINT, DISCOVERY, ORDER

| | |
|---|---|
| **CASE #:** | **23-CA-010008** |
| **COURT:** | **CIRCUIT** |
| **COUNTY:** | **LEE** |
| **DFS-SOP #:** | **23-000445370** |

# NOTICE OF SERVICE OF PROCESS

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial Officer of the State of Florida. Said process was received in my office by ELECTRONIC DELIVERY on Wednesday, September 6, 2023 and a copy was forwarded by ELECTRONIC DELIVERY on Friday, September 8, 2023 to the designated agent for the named entity as shown below.

SCOTTSDALE INSURANCE COMPANY
LYNETTE COLEMAN
1201 HAYS STREET
TALLAHASSEE, FL 32301

**\*Our office will only serve the initial process (Summons and Complaint) or Subpoena and is not responsible for transmittal of any subsequent filings, pleadings, or documents unless otherwise ordered by the Court pursuant to Florida Rules of Civil Procedure, Rule 1.080.**

*Jimmy Patronis*

Jimmy Patronis
Chief Financial Officer

ANTHONY LOPEZ
2601 SOUTH BAYSHORE DRIVE - SUITE 850
COCONUT GROVE, FL 33133

KS1

| IN THE CIRCUIT COURT OF THE 20TH JUDICIAL CIRCUIT IN AND FOR LEE COUNTY, FLORIDA | | |
|---|---|---|
| **DIVISION**<br>X CIVIL<br>ꝺ OTHER | **SUMMONS** | **CASE NUMBER**<br>23-CA-010008 |
| **PLAINTIFF(S)**<br>YOLANDA VALLE AND ANA C. BURGOS | **DEFENDANT(S)**<br>SCOTTSDALE INSURANCE COMPANY | **CLOCK IN** |

THE STATE OF FLORIDA:

To Each Sheriff of the State:

You ARE COMMANDED to serve this summons and a copy of the *Complaint, Plaintiffs' First Set of Interrogatories, Plaintiffs' First Request for Production, and Notice of Taking Corporate Representatives Deposition* in this action on defendant:

### SCOTTSDALE INSURANCE COMPANY
### c/o THE FLORIDA CHIEF FINANCIAL OFFICER as RA
### 200 E. GAINES STREET
### TALLAHASSEE, FLORIDA 32399-4201

Defendant is required to serve written defenses to the Complaint on Plaintiffs' Attorney: Mariela E. Cano., Florida Bar No. 1015817, whose address Your Insurance Attorney, PLLC., 2601 S. Bayshore Drive, 5th Floor, Miami, Florida 33133 Telephone No.: 1-888-570-5677, Telefax No.: 1-888-745-5677, Email: Eservice@Yourinsuranceattorney.com, Secondary Email: yia4@yourinsuranceattorney.com within 20 days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the Complaint.

| | | DATE<br>09/06/2023 |
|---|---|---|
| CLERK OF COURTS<br>Kevin C. Karnes | BY _NWatz_<br>DEPUTY CLERK | |

AMERICANS WITH DISABILITIES ACT OF 1990
IN ACCORDANCE WITH THE AMERICANS WITH DISABILITIES ACT OF 1990, PERSONS NEEDING A SPECIAL ACCOMMODATION TO PARTICIPATE IN THIS PROCEEDING SHOULD CONTACT THE ASA COORDINATOR, NO LATER THAN 7 DAYS PRIOR TO THE PROCEEDINGS AT 305/375-2006 (VOICE) OF 305/375-2007 (TDD)

COURT SEAL

IN THE CIRCUIT COURT OF THE
20TH JUDICIAL CIRCUIT IN AND FOR
LEE COUNTY, FLORIDA

YOLANDA VALLE AND ANA C. BURGOS,

                    Plaintiff,

CASE NO.:

v.

SCOTTSDALE INSURANCE COMPANY,

                    Defendant,

                                     /

## COMPLAINT

Plaintiff, YOLANDA VALLE AND ANA C. BURGOS (the "Insured"), hereby sues Defendant, SCOTTSDALE INSURANCE COMPANY (the "Insurance Company"), and alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1.     This is an action for damages that exceeds Fifty Thousand and 00/100 Dollars ($50,000.00), exclusive of interest, costs and attorney's fees and equitable relief by way of a Declaratory Judgment Action.

2.     The Insured is an individual who at all times material hereto has resided in Lee County, Florida.

3.     The Insurance Company is a Florida corporation qualified to do business in Florida and has, at all times material hereto, been conducting business in Lee County, Florida.

4.     Venue is proper in Lee County, Florida because the contract, which forms the subject matter of this lawsuit, was executed in Lee County, Florida.

5.     All conditions precedent to the filing of this lawsuit have occurred, have been waived or have been performed.

## GENERAL ALLEGATIONS

6.     At all times material hereto, in consideration of a premium paid by the Insured, there was in full force and effect a certain homeowners insurance policy issued by the Insurance Company with a policy number of HOS1948855 (the "Policy").  A true and correct copy of policy is attached hereto as Exhibit "**A**".

7.  The damaged property is located at 337 Capitol St, North Fort Myers, Florida 33903 (the "Property").

8.  Pursuant to the terms of the Policy, the Insurance Company agreed to provide insurance coverage to the Insured's Property for all risks unless specifically excluded by the terms of the Policy.

9.  On or about September 28, 2022, while the Policy was in full force and effect, the Property sustained a covered loss as a result of Hurricane Ian (the "Loss").

10. The Insurance Company assigned claim number 02112914 to the Loss.

11. The Insurance Company acknowledged that the Property sustained a covered Loss and offered payment.

12. However, after diligent inspection of the Loss, it was obvious that the Property sustained covered damages greater than the damages acknowledged by the Insurance Company.

13. As of the date of the filing of this lawsuit, the Insurance Company has failed to acknowledge that additional payment would be forthcoming and it has failed to adequately provide coverage under the terms of the Policy. As a result of the foregoing, the Insurance Company has breached the Policy.

14. The Insured has suffered and continues to suffer damages resulting from Insurance Company's breach of the Policy.

15. The Insured has been obligated to retain the undersigned attorneys for the prosecution of this action and is entitled to a reasonable attorney's fee pursuant to Florida Statute Sections 627.428 and/or 626.9373.

**COUNT I**
**<u>BREACH OF CONTRACT</u>**

16. The Insured reincorporates paragraphs 1 through 15 as if fully set forth herein.

17. It is undisputed that the Insured and the Insurance Company entered into a written contract, the Policy, wherein the Insured agreed to pay a premium and the Insurance Company agreed to insure the Insured's Property.

18. The Insured has paid all premiums due and owing as contemplated by the Policy; thus, fully performing obligations under the Policy.

19. The Insured's Property sustained damage which the Insurance Company agreed to provide coverage for under the terms of the Policy.

20. The Insurance Company has failed to: (i) provide coverage for the Loss under the terms of the Policy; and/or (ii) acknowledge that additional payment would be forthcoming; and/or (iii) make adequate payment of insurance proceeds to the Insured. As a result of the foregoing, the Insurance Company has breached the Policy.

21. As a direct and proximate result of the Insurance Company's breach of the Policy, the Insured has sustained damages.

WHEREFORE, the Insured respectfully requests that this Court enters judgment against the Insurance Company for damages, plus interest, court costs and reasonable attorney's fees pursuant to Sections 627.428 and/or 626.9373.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated this 28th day of August 2023.

**Respectfully Submitted by,**
**Your Insurance Attorney, PLLC.**
2601 South Bayshore Drive 5th Floor
Coconut Grove, FL 33133
Phone No.: 1-888-570-5677
Fax: 1-888-745-5677
Email: YIA4@Yourinsuranceattorney.com
Secondary Email: Eservice@Yourinsuranceattorney.com

By: /s/ *Mariela Cano*
    Mariela Cano, Esq.
    Florida Bar No. 1015817

**EXHIBIT "A"**

═══════════ **HOMEOWNER POLICY DECLARATIONS** ═══════════

| | | |
|---|---|---|
| NEW ISSUE | **SCOTTSDALE INSURANCE COMPANY** | **Policy Number** |
| | Home Office: | HOS1948855 |
| | One Nationwide Plaza Columbus, Ohio 43215 | |
| NEW | Administrative Office: | |
| Renewal of Number | 18700 North Hayden Road • Scottsdale, Arizona 85255 | |
| | 1-800-423-7675 | |
| | A STOCK COMPANY | |

**Named Insured and Mailing Address:**

YOLANDA VALLE AND ANA C BURGOS
337 CAPITAL ST.
NORTH FORT MYERS FL 33903

**General Agent:** SOUTHERN INSURANCE UNDERWRITERS, INC.

**Insured's Producer:** CLARK & BELL INSURANCE AGENCY

1832 VICTORIA AVENUE
FORT MYERS                          FL  33901

**Agent No.:** 006402          **Program No.:**

**Policy Period:** From: 04-20-2022   To: 04-20-2023   **Term:** 1 Year

12:01 A.M. Standard Time at the Described Location.

---

This insurance applies to the Residence Premises, Coverage for which a Limit of Liability or Premium is shown and Perils Insured Against for which a Premium is stated.
The Residence Premises: 337 CAPITAL ST., NORTH FORT MYERS, FL 33903

| Property Coverages: | | Limits of Liability | | Premiums |
|---|---|---|---|---|
| A—Dwelling | $ | 100,000 | $ | 1,264 |
| B—Other Structures | $ | 10,000 | $ | 127 |
| C—Personal Property | $ | 50,000 | $ | 632 |
| D—Loss of Use | $ | 10,000 | $ | 127 |
| **Additional Perils Insured Against:** | | Limits of Liability | | Premiums |
| | $ | | $ | |
| | $ | | $ | |
| | $ | | $ | |
| **Liability Coverages:** | | Limits of Liability | | Premiums |
| E—Personal Liability | $ | 300,000 | $ | 41 |
| F—Medical Payments to Others | $ | 1,000 | $ | INCLUDED |
| | $ | | $ | |
| | $ | | $ | |
| | $ | | $ | |
| **Optional Coverages:** | | Limits of Liability | | Premiums |
| Loss Assessment | $ | 1,000 | $ | INCLUDED |
| | $ | | $ | |
| | $ | | $ | |
| | $ | | $ | |

**Deductibles:** Property Deductible(s): $ 1,000        Wind/Hail: 2%
Earthquake:                               Personal Liability Deductible:

**Form(s) and endorsement(s) made part of this policy for this location:**
See Schedule of Forms and Endorsements - Form UTS-SP-2L

**Mortgagee(s), Additional Insured(s) and Lienholder(s) made a part of this policy for this location:**
See Schedule of Mortgagee(s), Additional Insured(s) and Leinholder(s) - Form UTS-264

**Rating Information:** Year of Construction: 1957   Territory: 004   Fire District or Town:        Protection Class: 03
Construction: FRAME                 No. of Families: 1        Occupancy: PRIMARY
Feet From Hydrant: 500   Miles From Fire Station: 2   Square Feet: 888

| **Policy Totals:** County: LEE | Sub-Total Premium: $ | 2,191.00 |
|---|---|---|
| | $ | |
| Billed to: AGENT | $ | |
| | $ | |
| | Total Taxes and Fees: $ | 358.30 |
| No Flat Cancellations | **Total Policy Premium:** $ | **2,549.30** |
| | Minimum Earned Premium: $ | 548.00 |

**THIS DECLARATIONS PAGE, WITH POLICY JACKET, HOMEOWNERS POLICY FORM, AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETES THE ABOVE NUMBERED HOMEOWNERS POLICY.**

---

HOS-D-2 (01-21)                                    05-04-22        KGEI
                                                                    KGEI

 **SCOTTSDALE INSURANCE COMPANY®**

## SCHEDULE OF TAXES, SURCHARGES OR FEES

Policy Number:  HOS1948855

Effective Date  04/20/2022

(12:01 A.M. Standard Time)

Named Insured:  YOLANDA VALLE AND ANA C BURGOS

Agent Number:  09018

TAXES, SURCHARGES OR FEES BREAKDOWN:

| | |
|---|---|
| Policy Fee | $100.00 |
| Inspection Fee | $135.00 |
| Surplus Lines Tax | $119.84 |
| FSLSO | $1.46 |
| EMG Fee | $2.00 |
| | |
| Total Taxes and Fees | $358.30 |

UTS-126L (10-93)

Home Office Copy

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## POLICYHOLDER NOTICE—COMPANY TELEPHONE NUMBER

The phone number shown on the policy provides a means of direct contact with the Company.

_____     _____
AUTHORIZED REPRESENTATIVE                                              DATE

Page 1 of 1



# SCOTTSDALE INSURANCE COMPANY®

## SCHEDULE OF FORMS AND ENDORSEMENTS

Policy No. HOS1948855                          Effective Date: 04-20-22
                                               12:01 A.M., Standard Time

Named Insured    YOLANDA VALLE AND ANA C BURGOS      Agent No. 09018

HOMEOWNERS FORMS AND ENDORSEMENTS

| | | |
|---|---|---|
| UTS-491. | 01-19 | Assignment of Claim Benefits |
| NOTS0378FL | 09-09 | FLORIDA POLICYHOLDER NOTICE |
| NOTS0133CW | 10-01 | PRIVACY NOTICE |
| NOTX0178CW | 03-16 | CLAIMS REPORTING INFORMATION |
| NOTX0105CW | 02-19 | PRIVACY STATEMENT |
| UTS-COVPG | 03-21 | COVER PAGE |
| HOS-D-2 | 01-21 | HOMEOWNER POLICY DECLARATIONS |
| UTS-126L | 10-93 | SCHEDULE OF TAXES, SURCHARGES OR FEES |
| UTS-278G | 09-06 | POLICYHOLDER NOTICE-CO TELEPHONE NUMBER |
| UTS-SP-2L | 12-95 | SCHEDULE OF FORMS & ENDORSEMENTS |
| UTS-264 | 05-98 | SCHEDULE MORTGAGEES/ADDL INSDS/LEINHLDRS |
| HOS-146-FL | 01-16 | SPECIAL PROVISIONS - FLORIDA |
| HOS-148 | 10-16 | THEFT LIMITATION |
| UTS-315S | 01-19 | TRAMPOLINE EXCLUSION |
| UTS-326S | 07-06 | LIBERALIZATION CLAUSE EXCLUSION |
| HO 00 08 | 05-11 | HOMEOWNERS 8 - MODIFIED COVERAGE |
| HO 04 16 | 10-00 | PREMISES ALARM OR FIRE PROTECTION SYSTEM |
| HO 04 81 | 05-11 | ACTUAL CASH VALUE LOSS SETTLEMENT |
| HOS-115S | 05-10 | WIND OR HAIL PERCENTAGE DEDUCTIBLE |
| UTS-419G | 11-11 | MINIMUM EARNED PREMIUM |
| DPS-5 | 01-06 | LEAD CONTAMINATION EXCLUSION |
| HOS-121S | 06-11 | TERRORISM EXLUSION |
| HOS-14S | 06-09 | BUSINESS PURSUITS EXCL (HOME DAY CARE) |
| HOS-16G | 01-98 | AMENDATORY ENDORSEMENT |
| UTS-237 | 09-18 | ROOF EXCLUSION |
| UTS-292G | 07-01 | MOLD EXCLUSION |
| UTS-301G | 11-05 | EARTH OR LAND MOVEMENT EXCLUSION |
| UTS-32G | 11-15 | OCCUPANCY ENDORSEMENT |
| UTS-330S | 04-16 | EXISTING DAMAGE EXCLUSION ENDORSEMENT |
| UTS-353G | 06-07 | SCREENED ENCL-SPEC UNIT FOR WIND OR HAIL |
| UTS-360S | 11-10 | LIMITED ANIMAL LIABILITY COVERAGE FORM |
| UTS-39S | 04-11 | POLLUTION LIABILITY EXCLUSION |
| UTS-490 | 11-18 | Total Constructive Loss Provision |
| UTS-9G | 06-20 | SERVICE OF SUIT CLAUSE |

UTS-SP-2L  (12/95)

 SCOTTSDALE INSURANCE COMPANY®

## SCHEDULE OF MORTGAGEES, ADDITIONAL INSUREDS AND LIENHOLDERS

**Policy Number:** HOS1948855

**Effective Date:** 04-20-22

**12:01 A.M., Standard Time**

**Named Insured:**
YOLANDA VALLE AND ANA C BURGOS

**Agent Number:** 09018

**Mortgagee**
WELLS FARGO BANK ▮▮▮▮▮
ISAOA

PO BOX 5708
SPRINGFIELD, OH 45501
Loan Number: 0133234666

UTS-264 (5-98)

# SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SPECIAL PROVISIONS—FLORIDA

**DEFINITIONS**

The following definitions are added:

**"Hurricane Occurrence"**

A "hurricane occurrence" means a storm system that has been declared to be a hurricane by the National Hurricane Center of the National Weather Service, with a duration that:

**a.** Begins at the time a hurricane watch or hurricane warning is issued for any part of Florida by the National Hurricane Center of the National Weather Service;

**b.** Continues for the time period during which the hurricane conditions exist anywhere in Florida; and

**c.** Ends seventy-two (72) hours following the termination of the last hurricane watch or hurricane warning issued for any part of Florida by the National Hurricane Center of the National Weather Service.

**"Catastrophic Ground Cover Collapse"**

"Catastrophic ground cover collapse" means geological activity that results in all of the following:

**a.** The abrupt collapse of the ground cover;

**b.** A depression in the ground cover clearly visible to the naked eye;

**c.** "Structural damage" of the "principal building" insured under this Policy, including the foundation; and

**d.** The "principal building" being condemned and ordered to be vacated by the governmental agency authorized by law to issue such an order for that "principal building."

"Catastrophic ground cover collapse" coverage does not apply to Coverage **B** structures.

**"Principal Building"**

In Forms **HO 00 02, HO 00 03, HO 00 04** and **HO 00 05:**

"Principal building" means the dwelling where you reside on the "residence premises" shown in the Declarations, including structures attached to the dwelling. "Principal building" does not include any other buildings or structures at that location.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2015

In Form **HO 00 06:**

"Principal building" means the unit where you reside shown as the "residence premises" in the Declarations. "Principal building" does not include any other buildings or structures at that location.

"**Structural Damage**"

"Structural damage" means a "principal building," regardless of the date of its construction, has experienced the following:

    **a.** Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement-related damage to the interior such that the interior building structure or members become unfit for service or represent a safety hazard as defined within the Florida Building Code;

    **b.** Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement-related damage to the "primary structural members" or "primary structural systems" that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those "primary structural members" or "primary structural systems" exceed one and one-third the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose or location;

    **c.** Damage that results in listing, leaning or buckling of the exterior load-bearing walls or other vertical "primary structural members" to such an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

    **d.** Damage that results in the building, or any portion of the building containing "primary structural members" or "primary structural systems," being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

    **e.** Damage occurring on or after October 15, 2005, that qualifies as "substantial structural damage" as defined in the Florida Building Code.

**"Primary Structural Member"**

"Primary structural member" means a structural element designed to provide support and stability for the vertical or lateral loads of the overall structure.

**"Primary Structural System"**

"Primary structural system" means an assemblage of "primary structural members."

**SECTION I—PROPERTY COVERAGES**

Paragraph **E.10.k.(2)(d)** is deleted in Form **HO 00 05** only.

In Form **HO 00 06:**

Paragraph **D.7.a.** is replaced by the following:

**D. Additional Coverages**

    **7. Loss Assessment**

        **a.** We will pay up to $2,000 per occurrence for your share of loss assessment charged during the policy period against you, as owner or tenant of the "residence premises," by a corporation or

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2015

association of property owners. The assessment must be made as a result of direct loss to property, owned by all members collectively, of the type that would be covered by this Policy if owned by you, caused by a Peril Insured Against under Coverage **A,** other than:

**(1)** Earthquake; or

**(2)** Land shock waves or tremors before, during or after a volcanic eruption.

However, the maximum amount of loss assessment coverage for any one property loss, regardless of the number of assessments, shall be an amount equal to your unit-owner's loss assessment coverage limit in effect one day before the date of the occurrence. Any changes to the limits of your unit-owner's coverage for loss assessments made on or after the day before the date of the occurrence are not applicable to such loss.

A deductible amount, not to exceed the lesser of:

**(3)** The deductible amount under this Policy equal to that which applies to the peril of fire; or

**(4)** Two hundred fifty dollars ($250);

applies to loss covered under this Additional Coverage. We will pay only that part of the total of all loss payable under this Additional Coverage that exceeds that deductible amount. However, if a deductible was or will be applied to other property loss sustained by you resulting from the same direct loss, then no deductible applies to this coverage.

## SECTION I—PERILS INSURED AGAINST

For Coverage **C,** the following peril is added:

**17. "Catastrophic Ground Cover Collapse"**

In Form **HO 00 05:**

Under Coverages **A, B** and **C:**

Paragraph **2.d.** is replaced by the following:

**d.** Constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years, unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

Paragraph **2.e.(3)** is replaced by the following:

**(3)** Smog, rust or other corrosion;

In Forms **HO 00 02, HO 00 04** and **HO 00 06,** the following peril is added:

**17. "Catastrophic Ground Cover Collapse"**

## SECTION I—EXCLUSIONS

Paragraph **2.** is replaced by the following:

**2. Earth Movement**

Earth movement means:

**a.** Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

**b.** Landslide, mudslide or mudflow;

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2015

    **c.** Subsidence or sinkhole; or

    **d.** Any other earth movement, including earth sinking, rising or shifting.

This Exclusion **2.** applies regardless of whether any of the above, in **2.a.** through **2.d.,** is caused by an act of nature or is otherwise caused.

However, direct loss by fire, explosion or theft resulting from any of the above, in **2.a.** through **2.d.,** is covered.

This Exclusion **2.** does not apply to loss by "Catastrophic ground cover collapse."

(This is Exclusion **A.2.** in Forms **HO 00 03** and **HO 00 05**.)

## SECTION I—CONDITIONS

**C. Duties After Loss**

Paragraph **1.** is replaced by the following:

**1.** Give prompt notice to us or our agent, except that a claim, supplemental claim or reopened claim for loss or damage caused by hurricane or other windstorm must be given to us in accordance with the terms of this Policy within three years after the hurricane first made landfall or a windstorm other than hurricane caused the covered damage. (Supplemental claim or reopened claim means an additional claim for recovery from us for losses from the same hurricane or other windstorm which we have previously adjusted pursuant to the initial claim.)

This provision concerning time for submission of a claim, supplemental claim or reopened claim does not affect any limitation for legal action against us as provided in this Policy under the Suit Against Us Condition, including any amendment to that condition.

**D. Loss Settlement**

In Forms **HO 00 02, HO 00 03** and **HO 00 05:**

Paragraph **2.d.** is replaced by the following:

    **d.** We will settle the loss as follows:

      **(1)** If the Mobilehome Endorsement is not made a part of this Policy, we will settle the loss as noted in **2.a.** of this provision. If **2.a.** is not applicable, we will settle the loss as follows:

        **(a)** We will initially pay the actual cash value of the building damage, minus any applicable deductible.

        **(b)** We will then pay the necessary amounts actually spent to repair or replace the damaged building as work is performed and expenses are incurred.

        **(c)** If a total loss, we will pay the replacement cost amount without deduction for depreciation.

      **(2)** If the Mobilehome Endorsement is made a part of this Policy:

        **(a)** We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in **2.a.** and **2.b.** of this provision.

        However, if the cost to repair or replace the damage is both:

          **(i)** Less than five percent (5%) of the amount of insurance in this Policy on the building; and

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2015

    (ii)  Less than $2,500;

we will settle the loss as noted in **2.a.** and **2.b.** of this provision whether or not actual repair or replacement is complete.

    **(b)**  You may disregard the replacement cost loss settlement provisions and make claim under this Policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition **D.** Loss Settlement, provided you notify us, within one hundred eighty (180) days after the date of loss, of your intent to repair or replace the damaged building.

Paragraph **2.e.** is deleted.

In Form **HO 00 06:**

Paragraph **2.** is replaced by the following:

**2.**  Coverage **A**—Dwelling, at the actual cost to repair or replace.

In this provision, the terms "repaired" and "replaced" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in **D.10.** Ordinance Or Law under Section **I**—Property Coverages.

In Form **HO 00 06:**

Paragraph **G. Other Insurance And Service Agreement** is replaced by the following:

**G.  Other Insurance And Service Agreement**

If a loss covered by this Policy is also covered by other insurance or a service agreement covering the same property, this insurance will be excess over the amount recoverable under such other insurance or service agreement.

However, if a loss covered by this Policy is covered by other insurance covering the same property and such other insurance is excess insurance over the amount recoverable under any other policy covering the same property, we will pay only the proportion of the loss that the limit of liability that applies under this Policy bears to the total amount of such insurance covering the loss.

Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

Paragraph **H. Suit Against Us** is replaced by the following:

**H.  Suit Against Us**

No action can be brought against us unless there has been full compliance with all of the terms under Section **I** of this Policy and the action is started within five years after the date of loss.

Paragraph **I. Our Option** is replaced by the following:

**I.  Our Option**

In Forms **HO 00 02, HO 00 03** and **HO 00 05:**

If at the time of loss:

**1.**  The Mobilehome Endorsement is made a part of this Policy, and we give you written notice within thirty (30) days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2015

2.  The Mobilehome Endorsement is not made a part of this Policy and the damaged property is:

    a.  Not insured for Replacement Cost Loss Settlement as outlined in Section I—Conditions, Loss Settlement, and we give you written notice within thirty (30) days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

    b.  Insured for Replacement Cost Loss Settlement as outlined in Section I—Conditions, Loss Settlement, we will pay the amount of loss as noted in paragraph **D.2.d.(1)** of the Loss Settlement provision.

Paragraph **J. Loss Payment** is replaced by the following:

**J. Loss Payment**

We will adjust all losses with you. We will pay you unless some other person is named in the Policy or is legally entitled to receive payment. Loss will be payable upon the earliest of the following:

1.  Twenty (20) days after we receive your proof of loss and reach written agreement with you;

2.  Sixty (60) days after we receive your proof of loss and:

    a.  There is an entry of a final judgment; or

    b.  There is a filing of an appraisal award or a mediation settlement with us.

Paragraph **R. Concealment Or Fraud** is replaced by the following:

**R. Concealment Or Fraud**

We provide coverage to no "insureds" under this Policy if, whether before or after a loss, an "insured" has:

1.  Intentionally concealed or misrepresented any material fact or circumstance;

2.  Engaged in fraudulent conduct; or

3.  Made material false statements;

relating to this insurance.

However, if this Policy has been in effect for more than ninety (90) days, we may not deny a claim filed by you or an "insured" on the basis of credit information available in public records.

(This is paragraph **Q.** in **HO 00 04.**)

**SECTION II—EXCLUSIONS**

**E.  Coverage E—Personal Liability And Coverage F—Medical Payments To Others**

Paragraph **8. Controlled Substances** is replaced in all forms and Endorsement **HO 24 73** by the following:

**8.  Controlled Substances**

"Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined under federal law. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the lawful orders of a licensed health care professional.

(This is Exclusion **9.** in **HO 24 73.**)

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2015

**SECTION II—CONDITIONS**

Paragraph **A. Limit Of Liability** is replaced by the following:

**A. Limit Of Liability**

    **1.** Our total liability under Coverage **E** for all damages resulting from any one "occurrence" will not be more than the Limit Of Liability for Coverage **E** as shown in the Declarations. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence."

    **2. Sublimit Of Liability**

        Subject to paragraph **1.** above, our total liability under Coverage **E** for damages for which an "insured" is legally liable because of statutorily imposed vicarious parental liability not otherwise excluded is $10,000. This sublimit is within, but does not increase, the Coverage **E** limit of liability.

    **3.** The limit of liability in **1.** above and sublimit in **2.** above apply regardless of the number of "insureds," claims made or persons injured.

    **4.** Our total liability under Coverage **F** for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Limit Of Liability for Coverage **F** as shown in the Declarations.

This condition does not apply with respect to damages arising out of "fungi," wet or dry rot, or bacteria when Endorsement **HO 03 34** is attached.

Paragraph **J. Concealment Or Fraud** is replaced by the following:

**J. Concealment Or Fraud**

We do not provide coverage to an "insured" who, whether before or after a loss, has:

    **1.** Intentionally concealed or misrepresented any material fact or circumstance;

    **2.** Engaged in fraudulent conduct; or

    **3.** Made material false statements;

relating to this insurance.

However, if this Policy has been in effect for more than ninety (90) days, we may not deny a claim filed by you or an "insured" on the basis of credit information available in public records.

**SECTIONS I AND II—CONDITIONS**

Paragraph **C. Cancellation** is replaced by the following:

**C. Cancellation**

    **1.** You may cancel this Policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

    **2.** If a state of emergency is declared by the Governor and the Commissioner of Insurance Regulation files an Emergency Order, and the "residence premises" has been damaged as a result of a hurricane or wind loss that is the subject of the declared emergency, we may cancel this Policy only for the following reasons, with respect to the period beginning from the date the state of emergency is declared to the expiration of ninety (90) days following the repairs to the dwelling or other structure located on the "residence premises," by letting you know in writing of the date cancellation takes

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2015

effect. This cancellation notice may be delivered to you or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

**a.** When you have not paid the premium, we may cancel during this period by letting you know at least ten (10) days before the date cancellation takes effect.

**b.** If:

**(1)** There has been a material misstatement or fraud related to the claim;

**(2)** We determine that you have unreasonably caused a delay in the repair of the dwelling or other structure; or

**(3)** We have paid policy limits;

we may cancel during this period by letting you know at least forty-five (45) days before the date cancellation takes effect.

**c.** We shall be entitled to collect any additional premium required to keep the Policy in effect during this period.

However, this provision **C.2.c.** does not apply if you have obtained replacement coverage with respect to the damaged property, and the coverage is in effect for a claim occurring during the duration of the extension.

**3.** If the conditions described in paragraph **C.2.** do not apply, we may cancel only for the following reasons:

**a.** When this Policy has been in effect for ninety (90) days or less, we may cancel immediately if there has been a material misstatement or misrepresentation or failure to comply with underwriting requirements.

**b.** We may also cancel this Policy subject to the following provisions. A written cancellation notice, together with the specific reasons for cancellation, will be delivered to you or mailed to you at your mailing address shown in the Declarations.

Proof of mailing will be sufficient proof of notice.

**(1)** When you have not paid the premium, we may cancel at any time by letting you know at least ten (10) days before the date cancellation takes effect.

**(2)** When this Policy has been in effect for ninety (90) days or less, we may cancel for any reason, except we may not cancel:

**(a)** On the basis of property insurance claims that are the result of an Act of God, unless we can demonstrate, by claims frequency or otherwise, that the "insured" has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property;

**(b)** On the basis of a single claim which is the result of water damage, unless we can demonstrate that the "insured" has failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property; or

**(c)** On the basis of the lawful use, possession or ownership of a firearm or ammunition by an "insured" or members of the "insured's" household.

Except as provided in paragraphs **C.3.a.** and **C.3.b.(1)** of this provision, we will let you know of our action at least twenty (20) days before the date cancellation takes effect.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2015

      **(3)** When this Policy has been in effect for more than ninety (90) days, we may cancel:

          **(a)** If there has been a material misstatement;

          **(b)** If the risk has changed substantially since the Policy was issued;

          **(c)** In the event of failure to comply, within ninety (90) days after the effective date of coverage, with underwriting requirements established by us before the effective date of coverage;

          **(d)** If the cancellation is for all insureds under policies of this type for a given class of insureds;

          **(e)** On the basis of property insurance claims that are the result of an Act of God, if we can demonstrate, by claims frequency or otherwise, that the "insured" has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

          **(f)** On the basis of a single claim which is the result of water damage, if we can demonstrate that the "insured" has failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property.

      **(4)** When this Policy has been in effect for more than ninety (90) days, we may not cancel:

          **(a)** On the basis of the lawful use, possession or ownership of a firearm or ammunition by an "insured" or members of the "insured's" household; or

          **(b)** On the basis of credit information available in public records.

      **(5)** If any of the reasons listed in paragraphs **C.3.b.(3)(a)-(f)** apply, we will provide written notice at least one hundred twenty (120) days before the date cancellation takes effect.

**4.** If the date of cancellation becomes effective during a "hurricane occurrence":

    **a.** The date of cancellation will not become effective until the end of the "hurricane occurrence"; and

    **b.** We shall be entitled to collect additional premium for the period beyond the original date of cancellation for which the Policy remains in effect.

    However, this provision **C.4.** does not apply if you have obtained replacement coverage with respect to the damaged property, and the coverage is in effect for a claim occurring during the duration of the "hurricane occurrence."

**5.** We may cancel this Policy after giving at least forty-five (45) days' notice if the Florida Office of Insurance Regulation determines and approves of our plan that early cancellation of some or all of our policies is necessary to protect the best interests of the policyholders due to our financial condition, lack of adequate reinsurance coverage for hurricane risk or other relevant factors.

**6.** When this Policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

**7.** If the return premium is not refunded with the notice of cancellation or when this Policy is returned to us, we will refund it within fifteen (15) days after the date cancellation takes effect.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2015

**Paragraph D. Nonrenewal is replaced by the following:**

**D. Nonrenewal**

1. We may elect not to renew this Policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice, together with the specific reasons for nonrenewal. Proof of mailing will be sufficient proof of notice.

   a. If a state of emergency is declared by the Governor and the Commissioner of Insurance Regulation files an Emergency Order, and the "residence premises" has been damaged as a result of a hurricane or wind loss that is the subject of the declared emergency, then, during the period beginning from the date the state of emergency is declared to the expiration of ninety (90) days following the repairs to the dwelling or other structure located on the "residence premises," we may elect not to renew this Policy only if:

      (1) You have not paid the renewal premium;

      (2) There has been a material misstatement or fraud related to the claim;

      (3) We determine that you have unreasonably caused a delay in the repair of the dwelling or other structure; or

      (4) We have paid policy limits.

      We may do so by letting you know at least forty-five (45) days before the expiration date of the Policy.

   b. We shall be entitled to collect any additional premium required to keep the Policy in effect during this period.

      However, this provision **D.1.b.** does not apply if you have obtained replacement coverage with respect to the damaged property, and the coverage is in effect for a claim occurring during the duration of the extension.

   c. If the conditions described in paragraph **D.1.a.** do not apply, we may elect not to renew this Policy by providing written notice at least one hundred twenty (120) days before the expiration date of this Policy.

2. We will not nonrenew this Policy:

   a. On the basis of property insurance claims that are the result of an Act of God, unless we can demonstrate, by claims frequency or otherwise, that the "insured" has failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property;

   b. On the basis of a single claim which is the result of water damage, unless we can demonstrate that the "insured" has failed to take action reasonably requested by us to prevent a future similar occurrence of damage to the insured property;

   c. On the basis of filing of claims for loss caused by sinkhole damage, unless:

      (1) The total of such property claim payments equals or exceeds the policy limits of the Policy in effect on the date of loss for property damage to the covered building(s); or

      (2) You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based;

   d. On the basis of the lawful use, possession or ownership of a firearm or ammunition by an "insured" or members of the "insured's" household; or

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2015

    **e.**  On the basis of credit information available in public records.

    **3.**  If the date of nonrenewal becomes effective during a "hurricane occurrence":

        **a.**  The expiration date of this Policy will not become effective until the end of the "hurricane occurrence"; and

        **b.**  We shall be entitled to collect additional premium for the period the Policy remains in effect. **However, this provision D.3. does not apply if you have obtained replacement coverage with respect to the damaged property, and the coverage is in effect for a claim occurring during the duration of the "hurricane occurrence."**

    **4.**  We may nonrenew this Policy after giving at least forty-five (45) days' notice if the Florida Office of Insurance Regulation determines and approves of our plan that early nonrenewal of some or all of our policies is necessary to protect the best interests of the policyholders due to our financial condition, lack of adequate reinsurance coverage for hurricane risk or other relevant factors.

The following conditions are added:

**H. Renewal Notification**

If we elect to renew this Policy, we will let you know, in writing:

    **1.**  Of our decision to renew this Policy; and

    **2.**  The amount of renewal premium payable to us.

This notice will be delivered to you or mailed to you at your mailing address shown in the Declarations at least forty-five (45) days before the expiration date of this Policy. Proof of mailing will be sufficient proof of notice.

**I. Notification Regarding Access**

If we require access to an "insured" or claimant or to the insured property that is the subject of a claim, we must provide at least forty-eight (48) hours' notice to you or the claimant, or your or the claimant's public adjuster or legal representative, before scheduling a meeting with you, the "insured" or the claimant or prior to conducting an on-site inspection of the insured property. You or the claimant may deny access to the property if the notice has not been provided or may waive the forty-eight (48) hour notice.

All other provisions of this Policy apply.

_____ /_____

            AUTHORIZED REPRESENTATIVE          DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2015



**SCOTTSDALE INSURANCE COMPANY®**

**ENDORSEMENT NO. _____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## THEFT LIMITATION

This endorsement modifies insurance provided under the following:

**HOMEOWNERS COVERAGE**

Under **SECTION 1—PERILS INSURED AGAINST,** paragraph **9. Theft** is replaced by:

**9. Theft**

   **a.** This peril includes attempted theft and loss of property provided theft is a result of burglary and visible signs of forced entry are evident. Mysterious disappearance will not be considered as theft.

   **b.** This peril does not include loss caused by theft:

      **(1)** Committed by an "insured";

      **(2)** In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied; or

      **(3)** From that part of a "residence premises" rented by an "insured" to other than an "insured."

      **(4)** That occurs off the "residence premises" to:

         **(a)** Property while at any other residence owned by, rented to, or occupied by an "insured," except while an "insured" is temporarily living there; or

         **(b)** Watercraft, including their trailers, furnishings, equipment and outboard engines or motors; or

         **(c)** Trailers not used with watercraft or campers.

**All other Terms and Conditions of this Policy remain unchanged.**

_____    /  _____
             AUTHORIZED REPRESENTATIVE              DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2013

Underwritten by Scottsdale Insurance Company

# ENDORSEMENT
# NO. _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
|  |  |  |  |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## TRAMPOLINE LIABILITY EXCLUSION

The following exclusion is added to this policy:

"Bodily injury" or "property damage" coverage does not apply to the use of a trampoline on an insured location. This exclusion applies to any use of a trampoline, whether or not sanctioned by the insured.

This exclusion supercedes and replaces any provision to the contrary.

**All other terms and conditions remain unchanged.**

_____   /_____
AUTHORIZED REPRESENTATIVE            DATE



# SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## LIBERALIZATION CLAUSE EXCLUSION (PERSONAL LINES)

This endorsement modifies insurance provided under the following:

**HOMEOWNERS 3—SPECIAL FORM
HOMEOWNERS 4—CONTENTS BROAD FORM
HOMEOWNERS 6—UNIT-OWNERS FORM
HOMEOWNERS 8—MODIFIED COVERAGE FORM
DWELLING PROPERTY 1—BASIC FORM
DWELLING PROPERTY 3—SPECIAL FORM
PERSONAL LIABILITY
INLAND MARINE POLICY
COMMON POLICY PROVISIONS (PERSONAL INLAND MARINE)**

The following changes are made to the coverage forms as indicated below:

1. The following applies to the **HOMEOWNERS 3—SPECIAL FORM, HOMEOWNERS 4—CONTENTS BROAD FORM, HOMEOWNERS 6—UNIT-OWNERS FORM** and **HOMEOWNERS 8—MODIFIED COVERAGE FORM** policies:

   Under **SECTIONS I AND II—CONDITIONS,** the **Liberalization Clause** is deleted in its entirety.

2. The following applies to the **DWELLING PROPERTY 1—BASIC FORM** and **DWELLING PROPERTY 3—SPECIAL FORM** policies:

   Under section **CONDITIONS,** the **Liberalization Clause** is deleted in its entirety.

3. The following applies to the **PERSONAL LIABILITY** form:

   The **Liberalization Clause,** Additional Policy Condition, is deleted in its entirety.

4. The following applies to the **COMMON POLICY PROVISIONS (PERSONAL INLAND MARINE):**

   Under section **E. Other Conditions,** item **10. Liberalization Clause** is deleted in its entirety.

5. The following applies to the **INLAND MARINE POLICY.**

   Under the **GENERAL CONDITIONS** section, paragraph **16. Liberalization Clause** is deleted in its entirety.

AUTHORIZED REPRESENTATIVE                    DATE

Page 1 of 1

# HOMEOWNERS 8 – MODIFIED COVERAGE FORM

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

**A.** In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We", "us" and "our" refer to the Company providing this insurance.

**B.** In addition, certain words and phrases are defined as follows:

**1.** "Aircraft Liability", "Hovercraft Liability", "Motor Vehicle Liability" and "Watercraft Liability", subject to the provisions in **b.** below, mean the following:

  **a.** Liability for "bodily injury" or "property damage" arising out of the:

    **(1)** Ownership of such vehicle or craft by an "insured";

    **(2)** Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;

    **(3)** Entrustment of such vehicle or craft by an "insured" to any person;

    **(4)** Failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; or

    **(5)** Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

  **b.** For the purpose of this definition:

    **(1)** Aircraft means any contrivance used or designed for flight except model or hobby aircraft not used or designed to carry people or cargo;

    **(2)** Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

    **(3)** Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor; and

    **(4)** Motor vehicle means a "motor vehicle" as defined in **7.** below.

**2.** "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

**3.** "Business" means:

  **a.** A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

  **b.** Any other activity engaged in for money or other compensation, except the following:

    **(1)** One or more activities, not described in **(2)** through **(4)** below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

    **(2)** Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

    **(3)** Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

    **(4)** The rendering of home day care services to a relative of an "insured".

**4.** "Employee" means an employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, whose duties are other than those performed by a "residence employee".

**5.** "Insured" means:

  **a.** You and residents of your household who are:

    **(1)** Your relatives; or

    **(2)** Other persons under the age of 21 and in your care or the care of a resident of your household who is your relative;

  **b.** A student enrolled in school full-time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:

    **(1)** 24 and your relative; or

    **(2)** 21 and in your care or the care of a resident of your household who is your relative; or

   c.  Under Section **II:**

     **(1)**  With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person described in **5.a.** or **b.** "Insured" does not mean a person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner; or

     **(2)**  With respect to a "motor vehicle" to which this policy applies:

       **(a)**  Persons while engaged in your employ or that of any person described in **5.a.** or **b.;** or

       **(b)**  Other persons using the vehicle on an "insured location" with your consent.

Under both Sections **I** and **II,** when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".

**6.**  "Insured location" means:

   **a.**  The "residence premises";

   **b.**  The part of other premises, other structures and grounds used by you as a residence; and

     **(1)**  Which is shown in the Declarations; or

     **(2)**  Which is acquired by you during the policy period for your use as a residence;

   **c.**  Any premises used by you in connection with a premises described in **a.** and **b.** above;

   **d.**  Any part of a premises:

     **(1)**  Not owned by an "insured"; and

     **(2)**  Where an "insured" is temporarily residing;

   **e.**  Vacant land, other than farm land, owned by or rented to an "insured";

   **f.**  Land owned by or rented to an "insured" on which a one-, two-, three- or four-family dwelling is being built as a residence for an "insured";

   **g.**  Individual or family cemetery plots or burial vaults of an "insured"; or

   **h.**  Any part of a premises occasionally rented to an "insured" for other than "business" use.

**7.**  "Motor vehicle" means:

   **a.**  A self-propelled land or amphibious vehicle; or

   **b.**  Any trailer or semitrailer which is being carried on, towed by or hitched for towing by a vehicle described in **a.** above.

**8.**  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

   **a.**  "Bodily injury"; or

   **b.**  "Property damage".

**9.**  "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

**10.**  "Residence employee" means:

   **a.**  An employee of an "insured", or an employee leased to an "insured" by a labor leasing firm, under an agreement between an "insured" and the labor leasing firm, whose duties are related to the maintenance or use of the "residence premises", including household or domestic services; or

   **b.**  One who performs similar duties elsewhere not related to the "business" of an "insured".

A "residence employee" does not include a temporary employee who is furnished to an "insured" to substitute for a permanent "residence employee" on leave or to meet seasonal or short-term workload conditions.

**11.**  "Residence premises" means:

   **a.**  The one-family dwelling where you reside;

   **b.**  The two-, three- or four-family dwelling where you reside in at least one of the family units; or

   **c.**  That part of any other building where you reside;

and which is shown as the "residence premises" in the Declarations.

"Residence premises" also includes other structures and grounds at that location.

## SECTION I – PROPERTY COVERAGES

### A.  Coverage A – Dwelling

**1.**  We cover:

   **a.**  The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

    **b.** Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

  **2.** We do not cover land, including land on which the dwelling is located.

## B. Coverage B – Other Structures

**1.** We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

**2.** We do not cover:

  **a.** Land, including land on which the other structures are located;

  **b.** Other structures rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage;

  **c.** Other structures from which any "business" is conducted; or

  **d.** Other structures used to store "business" property. However, we do cover a structure that contains "business" property solely owned by an "insured" or a tenant of the dwelling, provided that "business" property does not include gaseous or liquid fuel, other than fuel in a permanently installed fuel tank of a vehicle or craft parked or stored in the structure.

**3.** The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage **A.** Use of this coverage does not reduce the Coverage **A** limit of liability.

## C. Coverage C – Personal Property

### 1. Covered Property

We cover personal property owned or used by an "insured" while on the "residence premises". After a loss and at your request, we will cover personal property owned by others while the property is on the part of the "residence premises" occupied by an "insured".

### 2. Limit For Property At Other Locations

We also cover personal property owned or used by an "insured" while it is anywhere in the world but our limit of liability will not be more than 10% of the limit of liability for Coverage **C,** or $1,000, whichever is greater. However, this limitation does not apply to personal property:

**a.** Moved from the "residence premises" because it is:

  **(1)** Being repaired, renovated or rebuilt; and

  **(2)** Not fit to live in or store property in; or

**b.** In a newly acquired principal residence for 30 days from the time you begin to move the property there.

### 3. Special Limits Of Liability

The special limit for each category shown below is the total limit for each loss for all property in that category. These special limits do not increase the Coverage **C** limit of liability.

**a.** $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards and smart cards.

**b.** $1,500 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

This limit includes the cost to research, replace or restore the information from the lost or damaged material.

**c.** $1,500 on watercraft of all types, including their trailers, furnishings, equipment and outboard engines or motors.

**d.** $1,500 on trailers or semitrailers not used with watercraft of all types.

**e.** $2,500 on property, on the "residence premises", used primarily for "business" purposes.

f. $1,500 on property, away from the "residence premises", used primarily for "business" purposes. However, this limit does not apply to antennas, tapes, wires, records, disks or other media that are:

   (1) Used with electronic equipment that reproduces, receives or transmits audio, visual or data signals; and

   (2) In or upon a "motor vehicle".

g. $1,500 on portable electronic equipment that:

   (1) Reproduces, receives or transmits audio, visual or data signals;

   (2) Is designed to be operated by more than one power source, one of which is a "motor vehicle's" electrical system; and

   (3) Is in or upon a "motor vehicle".

h. $250 on antennas, tapes, wires, records, disks or other media that are:

   (1) Used with electronic equipment that reproduces, receives or transmits audio, visual or data signals; and

   (2) In or upon a "motor vehicle".

**4. Property Not Covered**

We do not cover:

a. Articles separately described and specifically insured, regardless of the limit for which they are insured, in this or other insurance;

b. Animals, birds or fish;

c. "Motor vehicles".

   This includes a "motor vehicle's" equipment and parts.

   However, this Paragraph **4.c.** does not apply to:

   (1) Portable electronic equipment that:

      (a) Reproduces, receives or transmits audio, visual or data signals; and

      (b) Is designed so that it may be operated from a power source other than a "motor vehicle's" electrical system.

   (2) "Motor vehicles" not required to be registered for use on public roads or property which are:

      (a) Used solely to service a residence; or

      (b) Designed to assist the handicapped;

d. Aircraft, meaning any contrivance used or designed for flight, including any parts whether or not attached to the aircraft.

   We do also cover model or hobby aircraft not used or designed to carry people or cargo;

e. Hovercraft and parts. Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

f. Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

g. Property in an apartment regularly rented or held for rental to others by an "insured";

h. Property rented or held for rental to others off the "residence premises";

i. "Business" data, including such data stored in:

   (1) Books of account, drawings or other paper records; or

   (2) Computers and related equipment.

   We do cover the cost of blank recording or storage media and of prerecorded computer programs available on the retail market;

j. Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds except as provided in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I** – Property Coverages; or

k. Water or steam.

**D. Coverage D – Loss Of Use**

The limit of liability for Coverage **D** is the total limit for the coverages in **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use below.

**1. Additional Living Expense**

If a loss covered under Section **I** makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

© Insurance Services Office, Inc., 2010

**2. Fair Rental Value**

If a loss covered under Section **I** makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the fair rental value of such premises less any expenses that do not continue while it is not fit to live in.

Payment will be for the shortest time required to repair or replace such premises.

**3. Civil Authority Prohibits Use**

If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against, we cover the loss as provided in **1.** Additional Living Expense and **2.** Fair Rental Value above for no more than two weeks.

**4. Loss Or Expense Not Covered**

We do not cover loss or expense due to cancellation of a lease or agreement.

The periods of time under **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use above are not limited by expiration of this policy.

**E. Additional Coverages**

**1. Debris Removal**

a. We will pay your reasonable expense for the removal of:

(1) Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

(2) Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

This expense is included in the limit of liability that applies to the damaged property.

b. We will also pay your reasonable expense, up to $1,000, for the removal from the "residence premises" of:

(1) Your trees felled by the peril of Windstorm or Hail; or

(2) A neighbor's trees felled by a Peril Insured Against under Coverage **C**;

provided the trees:

(3) Damage a covered structure; or

(4) Do not damage a covered structure, but:

(a) Block a driveway on the "residence premises" which prevents a "motor vehicle", that is registered for use on public roads or property, from entering or leaving the "residence premises"; or

(b) Block a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

The $1,000 limit is the most we will pay in any one loss, regardless of the number of fallen trees. No more than $500 of this limit will be paid for the removal of any one tree.

This coverage is additional insurance.

**2. Reasonable Repairs**

a. We will pay the reasonable cost incurred by you for the necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage.

b. If the measures taken involve repair to other damaged property, we will only pay if that property is covered under this policy and the damage is caused by a Peril Insured Against. This coverage does not:

(1) Increase the limit of liability that applies to the covered property; or

(2) Relieve you of your duties, in case of a loss to covered property, described in **C.4.** under Section **I – Conditions.**

**3. Trees, Shrubs And Other Plants**

We cover trees, shrubs, plants or lawns, on the "residence premises", for loss caused by the following Perils Insured Against:

a. Fire or Lightning;

b. Explosion;

c. Riot or Civil Commotion;

d. Aircraft;

e. Vehicles not owned or operated by a resident of the "residence premises";

f. Vandalism or Malicious Mischief; or

g. Theft.

We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $250 of this limit will be paid for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

This coverage is additional insurance.

**4. Fire Department Service Charge**

We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

**5. Property Removed**

We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed.

This coverage does not change the limit of liability that applies to the property being removed.

**6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money**

**a.** We will pay up to $500 for:

**(1)** The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

**(2)** Loss resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

**(3)** Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

**(4)** Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

This coverage is additional insurance. No deductible applies to this coverage.

**b.** We do not cover:

**(1)** Use of a credit card, electronic fund transfer card or access device:

**(a)** By a resident of your household;

**(b)** By a person who has been entrusted with either type of card or access device; or

**(c)** If an "insured" has not complied with all terms and conditions under which the cards are issued or the devices accessed; or

**(2)** Loss arising out of "business" use or dishonesty of an "insured".

**c.** If the coverage in **a.** applies, the following defense provisions also apply:

**(1)** We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

**(2)** If a suit is brought against an "insured" for liability under **a.(1)** or **(2)** above, we will provide a defense at our expense by counsel of our choice.

**(3)** We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under **a.(3)** above.

**7. Loss Assessment**

**a.** We will pay up to $1,000 for your share of loss assessment charged during the policy period against you, as owner or tenant of the "residence premises", by a corporation or association of property owners. The assessment must be made as a result of direct loss to property, owned by all members collectively, of the type that would be covered by this policy if owned by you, caused by a Peril Insured Against under Coverage **A**, other than:

**(1)** Earthquake; or

**(2)** Land shock waves or tremors before, during or after a volcanic eruption.

The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments. We will only apply one deductible, per unit, to the total amount of any one loss to the property described above, regardless of the number of assessments.

**b.** We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

© Insurance Services Office, Inc., 2010

c. Paragraph **Q.** Policy Period under Section **I** – Conditions does not apply to this coverage.

This coverage is additional insurance.

8. **Glass Or Safety Glazing Material**

   a. We cover:

      (1) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;

      (2) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window when caused directly by earth movement; and

      (3) The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

   b. This coverage does not include loss:

      (1) To covered property which results because the glass or safety glazing material has been broken, except as provided in **a.(3)** above; or

      (2) On the "residence premises" if the dwelling has been vacant for more than 60 consecutive days immediately before the loss, except when the breakage results directly from earth movement as provided in **a.(2)** above. A dwelling being constructed is not considered vacant.

   c. We will pay up to $100 for loss under this coverage.

   d. This coverage does not increase the limit of liability that applies to the damaged property.

**SECTION I – PERILS INSURED AGAINST**

We insure for direct physical loss to the property described in Coverages **A, B** and **C** caused by any of the following perils unless the loss is excluded in Section **I** – Exclusions.

1. **Fire Or Lightning**

2. **Windstorm Or Hail**

   This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

This peril does not include loss to the inside of a building or the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

3. **Explosion**

4. **Riot Or Civil Commotion**

5. **Aircraft**

   This peril includes self-propelled missiles and spacecraft.

6. **Vehicles**

   This peril does not include loss caused by a vehicle owned or operated by a resident of the "residence premises".

7. **Smoke**

   This peril means sudden and accidental damage from smoke, including the emission or puffback of smoke, soot, fumes or vapors from a boiler, furnace or related equipment.

   This peril does not include loss caused by smoke from fireplaces or from agricultural smudging or industrial operations.

8. **Vandalism Or Malicious Mischief**

   This peril does not include loss to property on the "residence premises", and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

9. **Theft**

   a. This peril includes attempted theft and loss of property from a known place on the "residence premises" when it is likely that the property has been stolen.

   b. This peril does not include loss caused by theft:

      (1) Committed by an "insured";

      (2) In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

      (3) From that part of a "residence premises" rented by an "insured" to someone other than another "insured"; or

      (4) That occurs off the "residence premises".

**c.** Personal property contained in any bank, trust or safe deposit company, public warehouse or self-storage facility will be considered on the "residence premises".

**d.** Our liability will not be more than $1,000 in any one loss caused by theft.

**10. Volcanic Eruption**

This peril does not include loss caused by earthquake, land shock waves or tremors.

**SECTION I – EXCLUSIONS**

We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

**1. Ordinance Or Law**

Ordinance Or Law means any ordinance or law:

**a.** Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris;

**b.** The requirements of which result in a loss in value to property; or

**c.** Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This Exclusion **1.** applies whether or not the property has been physically damaged.

**2. Earth Movement**

Earth Movement means:

**a.** Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

**b.** Landslide, mudslide or mudflow;

**c.** Subsidence or sinkhole; or

**d.** Any other earth movement including earth sinking, rising or shifting.

This Exclusion **2.** applies regardless of whether any of the above, in **2.a.** through **2.d.**, is caused by an act of nature or is otherwise caused.

However, direct loss by fire, explosion or theft resulting from any of the above, in **2.a.** through **2.d.**, is covered.

**3. Water**

This means:

**a.** Flood, surface water, waves, including tidal wave and tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind, including storm surge;

**b.** Water which:

**(1)** Backs up through sewers or drains; or

**(2)** Overflows or is otherwise discharged from a sump, sump pump or related equipment;

**c.** Water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure; or

**d.** Waterborne material carried or otherwise moved by any of the water referred to in **3.a.** through **3.c.** of this exclusion.

This Exclusion **3.** applies regardless of whether any of the above, in **3.a.** through **3.d.**, is caused by an act of nature or is otherwise caused.

This Exclusion **3.** applies to, but is not limited to, escape, overflow or discharge, for any reason, of water or waterborne material from a dam, levee, seawall or any other boundary or containment system.

However, direct loss by fire, explosion or theft resulting from any of the above, in **3.a.** through **3.d.**, is covered.

**4. Power Failure**

Power Failure means the failure of power or other utility service if the failure takes place off the "residence premises". But if the failure results in a loss, from a Peril Insured Against on the "residence premises", we will pay for the loss caused by that peril.

**5. Neglect**

Neglect means neglect of an "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

**6. War**

War includes the following and any consequence of any of the following:

**a.** Undeclared war, civil war, insurrection, rebellion or revolution;

**b.** Warlike act by a military force or military personnel; or

**c.** Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

**7. Nuclear Hazard**

This Exclusion **7.** pertains to Nuclear Hazard to the extent set forth in **N.** Nuclear Hazard Clause under Section **I** – Conditions.

**8. Intentional Loss**

Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

**9. Governmental Action**

Governmental Action means the destruction, confiscation or seizure of property described in Coverage **A, B** or **C** by order of any governmental or public authority.

This exclusion does not apply to such acts ordered by any governmental or public authority that are taken at the time of a fire to prevent its spread, if the loss caused by fire would be covered under this policy.

## SECTION I – CONDITIONS

**A. Insurable Interest And Limit Of Liability**

Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

**1.** To an "insured" for more than the amount of such "insured's" interest at the time of loss; or

**2.** For more than the applicable limit of liability.

**B. Deductible**

Unless otherwise noted in this policy, the following deductible provision applies:

With respect to any one loss:

**1.** Subject to the applicable limit of liability, we will pay only that part of the total of all loss payable that exceeds the deductible amount shown in the Declarations.

**2.** If two or more deductibles under this policy apply to the loss, only the highest deductible amount will apply.

**C. Duties After Loss**

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

**1.** Give prompt notice to us or our agent;

**2.** Notify the police in case of loss by theft;

**3.** Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I** – Property Coverages;

**4.** Protect the property from further damage. If repairs to the property are required, you must:

**a.** Make reasonable and necessary repairs to protect the property; and

**b.** Keep an accurate record of repair expenses;

**5.** Cooperate with us in the investigation of a claim;

**6.** Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

**7.** As often as we reasonably require:

**a.** Show the damaged property;

**b.** Provide us with records and documents we request and permit us to make copies; and

**c.** Submit to examination under oath, while not in the presence of another "insured", and sign the same;

**8.** Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

**a.** The time and cause of loss;

**b.** The interests of all "insureds" and all others in the property involved and all liens on the property;

**c.** Other insurance which may cover the loss;

**d.** Changes in title or occupancy of the property during the term of the policy;

**e.** Specifications of damaged buildings and detailed repair estimates;

**f.** The inventory of damaged personal property described in **6.** above;

**g.** Receipts for additional living expenses incurred and records that support the fair rental value loss; and

**h.** Evidence or affidavit that supports a claim under **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I** – Property Coverages, stating the amount and cause of loss.

**D. Loss Settlement**

Covered property losses are settled as follows:

1. Property of the following types:

   a. Personal property;

   b. Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings; and

   c. Structures that are not buildings;

   at actual cash value at the time of loss but not more than the amount required to repair or replace.

2. Buildings under Coverage **A** or **B**:

   a. If you repair or replace the loss to restore the building structure for the same occupancy and use at the same site within 180 days of the date of loss, we will pay the lesser of the following amounts:

      (1) The limit of liability that applies to the damaged or destroyed building structure; or

      (2) The necessary amount actually spent to repair or replace the loss to the building structure but no more than the cost of using common construction materials and methods where functionally equivalent to and less costly than obsolete, antique or custom construction materials and methods.

   b. If you do not make claim under Paragraph **a.** above, we will pay the least of the following amounts:

      (1) The limit of liability that applies to the damaged or destroyed building structure;

      (2) The market value at the time of loss of the damaged or destroyed building structure exclusive of land value; or

      (3) The amount which it would cost to repair or replace that part of the building structure damaged or destroyed with material of like kind and quality less allowance for physical deterioration and depreciation.

   In this provision, the terms "repair" and "replace" do not include the increased costs incurred to comply with the enforcement of any ordinance or law.

**E. Loss To A Pair Or Set**

In case of loss to a pair or set we may elect to:

1. Repair or replace any part to restore the pair or set to its value before the loss; or

2. Pay the difference between actual cash value of the property before and after the loss.

**F. Appraisal**

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

1. Pay its own appraiser; and

2. Bear the other expenses of the appraisal and umpire equally.

**G. Other Insurance And Service Agreement**

If a loss covered by this policy is also covered by:

1. Other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

2. A service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

**H. Suit Against Us**

No action can be brought against us unless there has been full compliance with all of the terms under Section **I** of this policy and the action is started within two years after the date of loss.

**I. Our Option**

If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

**J. Loss Payment**

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

1. Reach an agreement with you;

2. There is an entry of a final judgment; or

3. There is a filing of an appraisal award with us.

**K. Abandonment Of Property**

We need not accept any property abandoned by an "insured".

**L. Mortgage Clause**

1. If a mortgagee is named in this policy, any loss payable under Coverage **A** or **B** will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

2. If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

   a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

   b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

   c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Paragraphs **F.** Appraisal, **H.** Suit Against Us and **J.** Loss Payment under Section **I** – Conditions above also apply to the mortgagee.

3. If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

4. If we pay the mortgagee for any loss and deny payment to you:

   a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

   b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

5. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

**M. No Benefit To Bailee**

We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

**N. Nuclear Hazard Clause**

1. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

2. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against.

3. This policy does not apply under Section **I** to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

**O. Recovered Property**

If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

**P. Volcanic Eruption Period**

One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

**Q. Policy Period**

This policy applies only to loss which occurs during the policy period.

**R. Concealment Or Fraud**

We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements;

relating to this insurance.

**S. Loss Payable Clause**

If the Declarations shows a loss payee for certain listed insured personal property, the definition of "insured" is changed to include that loss payee with respect to that property.

If we decide to cancel or not renew this policy, that loss payee will be notified in writing.

## SECTION II – LIABILITY COVERAGES

### A. Coverage E – Personal Liability

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability for the "occurrence" has been exhausted by payment of a judgment or settlement.

### B. Coverage F – Medical Payments To Others

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury". Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees". As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or

2. To a person off the "insured location", if the "bodily injury":

   a. Arises out of a condition on the "insured location" or the ways immediately adjoining;

   b. Is caused by the activities of an "insured";

   c. Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

   d. Is caused by an animal owned by or in the care of an "insured".

## SECTION II – EXCLUSIONS

### A. "Motor Vehicle Liability"

1. Coverages E and F do not apply to any "motor vehicle liability" if, at the time and place of an "occurrence", the involved "motor vehicle":

   a. Is registered for use on public roads or property;

   b. Is not registered for use on public roads or property, but such registration is required by a law, or regulation issued by a government agency, for it to be used at the place of the "occurrence"; or

   c. Is being:

      (1) Operated in, or practicing for, any prearranged or organized race, speed contest or other competition;

      (2) Rented to others;

      (3) Used to carry persons or cargo for a charge; or

      (4) Used for any "business" purpose except for a motorized golf cart while on a golfing facility.

2. If Exclusion A.1. does not apply, there is still no coverage for "motor vehicle liability", unless the "motor vehicle" is:

   a. In dead storage on an "insured location";

   b. Used solely to service a residence;

   c. Designed to assist the handicapped and, at the time of an "occurrence", it is:

      (1) Being used to assist a handicapped person; or

      (2) Parked on an "insured location";

   d. Designed for recreational use off public roads and:

      (1) Not owned by an "insured"; or

      (2) Owned by an "insured" provided the "occurrence" takes place:

         (a) On an "insured location" as defined in Definition B.6.a., b., d., e. or h.; or

         (b) Off an "insured location" and the "motor vehicle" is:

            (i) Designed as a toy vehicle for use by children under seven years of age;

            (ii) Powered by one or more batteries; and

            (iii) Not built or modified after manufacture to exceed a speed of five miles per hour on level ground;

e. A motorized golf cart that is owned by an "insured", designed to carry up to four persons, not built or modified after manufacture to exceed a speed of 25 miles per hour on level ground and, at the time of an "occurrence", is within the legal boundaries of:

(1) A golfing facility and is parked or stored there, or being used by an "insured" to:

(a) Play the game of golf or for other recreational or leisure activity allowed by the facility;

(b) Travel to or from an area where "motor vehicles" or golf carts are parked or stored; or

(c) Cross public roads at designated points to access other parts of the golfing facility; or

(2) A private residential community, including its public roads upon which a motorized golf cart can legally travel, which is subject to the authority of a property owners association and contains an "insured's" residence.

## B. "Watercraft Liability"

1. Coverages **E** and **F** do not apply to any "watercraft liability" if, at the time of an "occurrence", the involved watercraft is being:

a. Operated in, or practicing for, any prearranged or organized race, speed contest or other competition. This exclusion does not apply to a sailing vessel or a predicted log cruise;

b. Rented to others;

c. Used to carry persons or cargo for a charge; or

d. Used for any "business" purpose.

2. If Exclusion **B.1.** does not apply, there is still no coverage for "watercraft liability" unless, at the time of the "occurrence", the watercraft:

a. Is stored;

b. Is a sailing vessel, with or without auxiliary power, that is:

(1) Less than 26 feet in overall length; or

(2) 26 feet or more in overall length and not owned by or rented to an "insured"; or

c. Is not a sailing vessel and is powered by:

(1) An inboard or inboard-outdrive engine or motor, including those that power a water jet pump, of:

(a) 50 horsepower or less and not owned by an "insured"; or

(b) More than 50 horsepower and not owned by or rented to an "insured"; or

(2) One or more outboard engines or motors with:

(a) 25 total horsepower or less;

(b) More than 25 horsepower if the outboard engine or motor is not owned by an "insured";

(c) More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it during the policy period; or

(d) More than 25 horsepower if the outboard engine or motor is owned by an "insured" who acquired it before the policy period, but only if:

(i) You declare them at policy inception; or

(ii) Your intent to insure them is reported to us in writing within 45 days after you acquire them.

The coverages in **(c)** and **(d)** above apply for the policy period.

Horsepower means the maximum power rating assigned to the engine or motor by the manufacturer.

## C. "Aircraft Liability"

This policy does not cover "aircraft liability".

## D. "Hovercraft Liability"

This policy does not cover "hovercraft liability".

## E. Coverage E – Personal Liability And Coverage F – Medical Payments To Others

Coverages **E** and **F** do not apply to the following:

1. **Expected Or Intended Injury**

"Bodily injury" or "property damage" which is expected or intended by an "insured", even if the resulting "bodily injury" or "property damage":

a. Is of a different kind, quality or degree than initially expected or intended; or

b. Is sustained by a different person, entity or property than initially expected or intended.

However, this Exclusion **E.1.** does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force by an "insured" to protect persons or property;

2. **"Business"**

a. "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

This Exclusion **E.2.** applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

b. This Exclusion **E.2.** does not apply to:

(1) The rental or holding for rental of an "insured location":

(a) On an occasional basis if used only as a residence;

(b) In part for use only as a residence, unless a single-family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

(c) In part, as an office, school, studio or private garage; and

(2) An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees.

3. **Professional Services**

"Bodily injury" or "property damage" arising out of the rendering of or failure to render professional services;

4. **"Insured's" Premises Not An "Insured Location"**

"Bodily injury" or "property damage" arising out of a premises:

a. Owned by an "insured";

b. Rented to an "insured"; or

c. Rented to others by an "insured";

that is not an "insured location";

5. **War**

"Bodily injury" or "property damage" caused directly or indirectly by war, including the following and any consequence of any of the following:

a. Undeclared war, civil war, insurrection, rebellion or revolution;

b. Warlike act by a military force or military personnel; or

c. Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

6. **Communicable Disease**

"Bodily injury" or "property damage" which arises out of the transmission of a communicable disease by an "insured";

7. **Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse**

"Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse; or

8. **Controlled Substance**

"Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the lawful orders of a licensed health care professional.

Exclusions **A.** "Motor Vehicle Liability", **B.** "Watercraft Liability", **C.** "Aircraft Liability", **D.** "Hovercraft Liability" and **E.4.** "Insured's" Premises Not An "Insured Location" do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

F. **Coverage E – Personal Liability**

Coverage **E** does not apply to:

1. Liability:

a. For any loss assessment charged against you as a member of an association, corporation or community of property owners, except as provided in **D.** Loss Assessment under Section **II** – Additional Coverages;

b. Under any contract or agreement entered into by an "insured". However, this exclusion does not apply to written contracts:

(1) That directly relate to the ownership, maintenance or use of an "insured location"; or

(2) Where the liability of others is assumed by you prior to an "occurrence";

unless excluded in **a.** above or elsewhere in this policy;

© Insurance Services Office, Inc., 2010

2. "Property damage" to property owned by an "insured". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location";

3. "Property damage" to property rented to, occupied or used by or in the care of an "insured". This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

4. "Bodily injury" to any person eligible to receive any benefits voluntarily provided or required to be provided by an "insured" under any:

   a. Workers' compensation law;

   b. Non-occupational disability law; or

   c. Occupational disease law;

5. "Bodily injury" or "property damage" for which an "insured" under this policy:

   a. Is also an insured under a nuclear energy liability policy issued by the:

     (1) Nuclear Energy Liability Insurance Association;

     (2) Mutual Atomic Energy Liability Underwriters;

     (3) Nuclear Insurance Association of Canada;

     or any of their successors; or

   b. Would be an insured under such a policy but for the exhaustion of its limit of liability; or

6. "Bodily injury" to you or an "insured" as defined under Definition **5.a.** or **b.**

   This exclusion also applies to any claim made or suit brought against you or an "insured" to:

   a. Repay; or

   b. Share damages with;

   another person who may be obligated to pay damages because of "bodily injury" to an "insured".

## G. Coverage F – Medical Payments To Others

Coverage **F** does not apply to "bodily injury":

1. To a "residence employee" if the "bodily injury":

   a. Occurs off the "insured location"; and

   b. Does not arise out of or in the course of the "residence employee's" employment by an "insured";

2. To any person eligible to receive benefits voluntarily provided or required to be provided under any:

   a. Workers' compensation law;

   b. Non-occupational disability law; or

   c. Occupational disease law;

3. From any:

   a. Nuclear reaction;

   b. Nuclear radiation; or

   c. Radioactive contamination;

   all whether controlled or uncontrolled or however caused; or

   d. Any consequence of any of these; or

4. To any person, other than a "residence employee" of an "insured", regularly residing on any part of the "insured location".

## SECTION II – ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

## A. Claim Expenses

We pay:

1. Expenses we incur and costs taxed against an "insured" in any suit we defend;

2. Premiums on bonds required in a suit we defend, but not for bond amounts more than the Coverage **E** limit of liability. We need not apply for or furnish any bond;

3. Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit; and

4. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

## B. First Aid Expenses

We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to an "insured".

## C. Damage To Property Of Others

1. We will pay, at replacement cost, up to $1,000 per "occurrence" for "property damage" to property of others caused by an "insured".

2. We will not pay for "property damage":

   a. To the extent of any amount recoverable under Section **I**;

**b.** Caused intentionally by an "insured" who is 13 years of age or older;

**c.** To property owned by an "insured";

**d.** To property owned by or rented to a tenant of an "insured" or a resident in your household; or

**e.** Arising out of:

**(1)** A "business" engaged in by an "insured";

**(2)** Any act or omission in connection with a premises owned, rented or controlled by an "insured", other than the "insured location"; or

**(3)** The ownership, maintenance, occupancy, operation, use, loading or unloading of aircraft, hovercraft, watercraft or "motor vehicles".

This Exclusion **e.(3)** does not apply to a "motor vehicle" that:

**(a)** Is designed for recreational use off public roads;

**(b)** Is not owned by an "insured"; and

**(c)** At the time of the "occurrence", is not required by law, or regulation issued by a government agency, to have been registered for it to be used on public roads or property.

**D. Loss Assessment**

**1.** We will pay up to $1,000 for your share of loss assessment charged against you, as owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of:

**a.** "Bodily injury" or "property damage" not excluded from coverage under Section II – Exclusions; or

**b.** Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided such person:

**(1)** Is elected by the members of a corporation or association of property owners; and

**(2)** Serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

**2.** Paragraph **I.** Policy Period under Section II – Conditions does not apply to this Loss Assessment Coverage.

**3.** Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:

**a.** One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

**b.** A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

**4.** We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

**SECTION II – CONDITIONS**

**A. Limit Of Liability**

Our total liability under Coverage **E** for all damages resulting from any one "occurrence" will not be more than the Coverage **E** Limit Of Liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

Our total liability under Coverage **F** for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage **F** Limit Of Liability shown in the Declarations.

**B. Severability Of Insurance**

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one "occurrence".

**C. Duties After "Occurrence"**

In case of an "occurrence", you or another "insured" will perform the following duties that apply. We have no duty to provide coverage under this policy if your failure to comply with the following duties is prejudicial to us. You will help us by seeing that these duties are performed:

**1.** Give written notice to us or our agent as soon as is practical, which sets forth:

**a.** The identity of the policy and the "named insured" shown in the Declarations;

**b.** Reasonably available information on the time, place and circumstances of the "occurrence"; and

**c.** Names and addresses of any claimants and witnesses;

2. Cooperate with us in the investigation, settlement or defense of any claim or suit;

3. Promptly forward to us every notice, demand, summons or other process relating to the "occurrence";

4. At our request, help us:

   a. To make settlement;

   b. To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

   c. With the conduct of suits and attend hearings and trials; and

   d. To secure and give evidence and obtain the attendance of witnesses;

5. With respect to **C.** Damage To Property Of Others under Section **II** – Additional Coverages, submit to us within 60 days after the loss a sworn statement of loss and show the damaged property, if in an "insured's" control;

6. No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury".

**D. Duties Of An Injured Person – Coverage F – Medical Payments To Others**

1. The injured person or someone acting for the injured person will:

   a. Give us written proof of claim, under oath if required, as soon as is practical; and

   b. Authorize us to obtain copies of medical reports and records.

2. The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

**E. Payment Of Claim – Coverage F – Medical Payments To Others**

Payment under this coverage is not an admission of liability by an "insured" or us.

**F. Suit Against Us**

1. No action can be brought against us unless there has been full compliance with all of the terms under this Section **II.**

2. No one will have the right to join us as a party to any action against an "insured".

3. Also, no action with respect to Coverage **E** can be brought against us until the obligation of such "insured" has been determined by final judgment or agreement signed by us.

**G. Bankruptcy Of An "Insured"**

Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

**H. Other Insurance**

This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

**I. Policy Period**

This policy applies only to "bodily injury" or "property damage" which occurs during the policy period.

**J. Concealment Or Fraud**

We do not provide coverage to an "insured" who, whether before or after a loss, has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements;

relating to this insurance.

**SECTIONS I AND II – CONDITIONS**

**A. Liberalization Clause**

If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of this policy; or

2. An amendatory endorsement.

**B. Waiver Or Change Of Policy Provisions**

A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

**C. Cancellation**

1. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

© Insurance Services Office, Inc., 2010

**2.** We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

**a.** When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

**b.** When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

**c.** When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

**(1)** If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

**(2)** If the risk has changed substantially since the policy was issued.

This can be done by letting you know at least 30 days before the date cancellation takes effect.

**d.** When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

**3.** When this policy is canceled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

**4.** If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

**D. Nonrenewal**

We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

**E. Assignment**

Assignment of this policy will not be valid unless we give our written consent.

**F. Subrogation**

An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply to Coverage **F** or Paragraph **C.** Damage To Property Of Others under Section **II** – Additional Coverages.

**G. Death**

If any person named in the Declarations or the spouse, if a resident of the same household, dies, the following apply:

**1.** We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death; and

**2.** "Insured" includes:

**a.** An "insured" who is a member of your household at the time of your death, but only while a resident of the "residence premises"; and

**b.** With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

**HOMEOWNERS**
**HO 04 16 10 00**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PREMISES ALARM OR FIRE PROTECTION SYSTEM

We acknowledge the installation of an alarm system and/or automatic sprinkler system approved by us on the "residence premises". You agree to maintain this system or systems, for which we have granted a credit, in working order and to let us know promptly of any change, including removal, made to the system(s).

    Copyright, Insurance Services Office, Inc.,  1999

**HOMEOWNERS**
**HO 04 81 05 11**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ACTUAL CASH VALUE LOSS SETTLEMENT

**SECTION I – CONDITIONS**

Paragraph **D. Loss Settlement** is replaced by the following:

**D. Loss Settlement**

Covered property losses shall be settled at actual cash value at the time of loss but shall not be settled at more than the amount required to repair or replace.

All other provisions of this policy apply.

**SCOTTSDALE INSURANCE COMPANY®**

| | ENDORSEMENT NO. _____ |
|---|---|

Attached to and forming a part of

Policy No.   HOS1948855

Named Insured   YOLANDA VALLE AND ANA C BURGOS

Endorsement Effective Date  04-20-2022

12:01 A.M., Standard Time

Agent No.   09018

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## WIND OR HAIL PERCENTAGE DEDUCTIBLE

This endorsement modifies insurance provided under the following:

**HOMEOWNERS 3—SPECIAL FORM
HOMEOWNERS 8—MODIFIED COVERAGE FORM
HOMEOWNERS 6—UNIT-OWNERS FORM
HOMEOWNERS 4—CONTENTS BROAD FORM**

**THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR WIND OR HAIL LOSSES WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU.**

**Wind Or Hail Percentage Deductible:**  2  **%**
(Entry may be left blank if shown elsewhere in this policy.)

The following changes are made to the policies as indicated below.

1.  The following wind or hail deductible provision is applicable to the **HOMEOWNERS 3–SPECIAL FORM** and **HOMEOWNERS 8–MODIFIED COVERAGE FORM** policies:

    We will pay only that part of the total of all loss or damage payable under Coverage **A, B** or **C** that exceeds the Wind Or Hail Percentage Deductible shown above in this endorsement. This deductible applies in the event of direct physical loss or damage to property covered under this policy caused directly or indirectly by wind or hail. Except in the state of Washington, such deductible applies regardless of any other cause or event contributing concurrently or in any sequence to the loss.

    In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to the Wind Or Hail Percentage Deductible of the Limit of Insurance that applies at the time of loss or damage. This deductible amount will apply separately to Coverage **A, B** or **C** for each location. This deductible amount will not be less than the Property Deductible

shown on the Declarations for the covered property that sustains loss or damage.

All other provisions of this policy remain in effect.

2.  The following wind or hail deductible provision is applicable to the **HOMEOWNERS 4–CONTENTS BROAD FORM** policies.

    We will pay only that part of the total of all loss or damage payable under Coverage **C** that exceeds the Wind Or Hail Percentage Deductible shown above in this endorsement. This deductible applies in the event of direct physical loss or damage to property covered under this policy directly or indirectly by wind or hail. Except in the state of Washington, such deductible applies regardless of any other cause or event contributing concurrently or in any sequence to the loss.

    In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to the Wind Or Hail Percentage Deductible of the Limit of Insurance that applies at the time of loss or damage. This deductible amount will apply separately to Coverage **C** for each location. This deductible amount will not be less than the Property Deductible shown on the Declarations for the covered property that sustains loss or damage.

    All other provisions of this policy remain in effect.

3.  The following wind or hail deductible provision is applicable to the **HOMEOWNERS 6–UNIT-OWNERS FORM** policies.

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2009

HOS-115s (5-10)

Page 1 of 2

Home Office Copy

We will pay only that part of the total of all loss or damage payable under Coverage **A** and **C** that exceeds the Wind Or Hail Percentage Deductible shown above in this endorsement. This deductible applies in the event of direct physical loss or damage to property covered under this policy directly or indirectly by wind or hail.  Except in the state of Washington, such deductible applies regardless of any other cause or event  contributing concurrently or in any

sequence to the loss.  In determining the amount, if any, that we will pay  for loss or damage,  we will deduct an amount equal to the Wind Or Hail Percentage Deductible of the Limit of Insurance that applies at the time of loss or  damage. This deductible amount will apply separately to Coverage **A** and **C** for each location. This deductible amount will not be less than the Property Deductible shown on the Declarations for the covered property that sustains loss or damage.

**All other provisions of this policy remain in effect.**

_____

AUTHORIZED REPRESENTATIVE                    DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2009

Home Office Copy

eFiled Lee County Clerk of Courts Page 45

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO. _____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MINIMUM EARNED PREMIUM

If this policy is cancelled at the request of the Insured, the total retained by the Company shall not be less than ____% of the original premium or $ _____ .

(Entries may be left blank if shown elsewhere in this policy)

_____/_____
                    AUTHORIZED REPRESENTATIVE                              DATE

Page 1 of 1

UTS-419g (11-11)

# SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## LEAD CONTAMINATION EXCLUSION

This policy does not apply to:

a.   "Bodily injury," "personal injury" or medical payments caused by an "occurrence" or offense involving the ingestion, inhalation or absorption of lead in any form;

b.   "Property damage" or "personal injury" caused by an "occurrence" or offense involving lead; or

c.   Any loss, cost or expense arising out of any:

(1)   Request, demand or order that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead; or

(2)   Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead.

_____      _____

AUTHORIZED REPRESENTATIVE                DATE

Page 1 of 1

DPS-5 (1-06)



SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXCLUSION OF TERRORISM

This policy modifies coverage provided under the following:

**HOMEOWNERS COVERAGE**

The following exclusion is added to **SECTION I— EXCLUSIONS:**

**Terrorism**

We do not insure for loss caused directly or indirectly by "terrorism," including action in hindering or defending against an actual or expected incident of "terrorism." Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

Multiple incidents of "terrorism" which occur within a seventy-two (72) hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident.

But with respect to any incident of "terrorism" that also comes within the terms of **War** Exclusion of the Coverage Form, that exclusion supersedes this Terrorism Exclusion.

In the event of an incident of "terrorism" that involves nuclear reaction or radiation, or radioactive contamination, this Terrorism Exclusion supersedes the **Nuclear Hazard** Exclusion and **Nuclear Hazard Clause** Condition of the Coverage Form.

The following exclusion is added to **SECTION II— EXCLUSIONS:**

**Terrorism**

This policy does not apply to "bodily injury" or "property damage" or medical payments caused directly or indirectly by "terrorism," including any action taken in hindering or defending against an actual or expected incident of "terrorism."

Multiple incidents of "terrorism" which occur within a seventy-two (72) hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

As used in this endorsement, "terrorism" means activities against persons, organizations or property of any nature:

**a.** That involve the following or preparation for the following:

**(1)** Use or threat of force or violence; or

**(2)** Commission or threat of a dangerous act; or

**(3)** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

**b.** When one or both of the following applies:

**(1)** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

**(2)** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

_____    /_____
AUTHORIZED REPRESENTATIVE                              DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2001



**SCOTTSDALE INSURANCE COMPANY**®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BUSINESS PURSUITS EXCLUSION
## (Home Day Care)

This endorsement modifies insurance provided under the following:

**HOMEOWNERS 3—SPECIAL FORM**
**HOMEOWNERS 3—SPECIAL FORM—WASHINGTON**
**HOMEOWNERS 4—CONTENTS BROAD FORM**
**HOMEOWNERS 4—CONTENTS BROAD FORM—WASHINGTON**
**HOMEOWNERS 6—UNIT-OWNERS FORM**
**HOMEOWNERS 6—UNIT-OWNERS FORM—WASHINGTON**
**HOMEOWNERS 8—MODIFIED COVERAGE FORM**
**HOMEOWNERS 8—MODIFIED COVERAGE FORM—WASHINGTON**

Under **Section II—Exclusions,** subsection **E. Coverage E—Personal Liability** and **Coverage F—Medical Payments To Others,** item **2. "Business"** is replaced by:

**2.** Coverage does not apply to "bodily injury," "property damage" or medical payments arising out of your "business."

This includes:

**a.** The rental or holding for rental of any part of any premises by you; or

**b.** Home day care services provided by an "insured" to a person or persons other than "insureds" when monetary or other consideration for such services is received by an "insured." Mutual exchange of home day care services is not consideration for the purposes of this exclusion. The rendering of home day care

services by an "insured" to a relative of an "insured" is not considered a "business."

This exclusion does not apply to:

**(1)** Activities which are ordinarily incidental to nonbusiness pursuits; or

**(2)** The rental or holding for rental of an "insured location";

**(a)** On an occasional basis for the exclusive use as a residence;

**(b)** In part, unless intended for use as a residence by more than two roomers or boarders; or

**(c)** In part, as an office, school, studio or private garage.

AUTHORIZED REPRESENTATIVE                    DATE

Includes copyrighted material of ISO Properties, Inc., with its permission.
Copyright, ISO Properties, Inc., 2000

HOS-14s (6-09)                    Page 1 of 1

# SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO. _____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMENDATORY ENDORSEMENT

### PUNITIVE OR EXEMPLARY DAMAGE EXCLUSION

This policy does not apply to a claim, or indemnification, for punitive or exemplary damages.

Punitive or exemplary damages includes any damage award pursuant to statute, of double, treble or other multiple damages in excess of compensatory damages.

If suit is brought against the insured for a claim covered under the policy, seeking both compensatory and punitive or exemplary damages, the Company will afford a defense to such action. However, the Company will have no obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages

### ANIMAL EXCLUSION

This policy does not provide coverage for "bodily injury," "property damage" or medical payments to others, caused by any animal, whether owned or not owned by any "insured."

### ASSAULT AND BATTERY EXCLUSION

This insurance does not apply to **bodily injury** or **property damage** arising from:

A.  Assault and Battery committed by any insured, any employee of any insured, or any other person;

B.  The failure to suppress or prevent Assault and Battery by any such person; or

C.  Any Assault or Battery from or allegedly related to the negligent hiring, supervision or training of any employee of the insured.

_____ / _____
AUTHORIZED REPRESENTATIVE                      DATE

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1995

HOS-16g (1-98)

Underwritten by Scottsdale Insurance Company

**ENDORSEMENT NO. _____**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
|  |  |  |  |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ROOF EXCLUSION

### SCHEDULE

| Premises Address | Description Of Building Or Structure |
|---|---|
|  |  |

This exclusion applies to all buildings or structures described in the Schedule above. If the Schedule is left blank, then this exclusion applies to all buildings or structures shown in the Declarations.

We will not pay for:

1. Any loss or damage to "roof coverings" including the layer of the roof that is used as the base for securing "roof coverings"; or

2. Any loss or damage to covered property caused by or resulting from rain, hail, melting snow or ice if the rain, hail, melting snow or ice enter through "roof coverings" including the layer of the roof that is used as the base for securing "roof coverings."

This exclusion applies regardless of whether any other cause contributes concurrently or in sequence to cause damage to the "roof coverings," even if that other cause is a covered cause of loss. But if fire or explosion occurs, we will pay for the loss or damage caused by that fire or explosion.

For the purposes of this endorsement the following definition applies:

"Roof coverings" means the roof surface, shingles, tiles, cladding, metal or synthetic sheeting, metal components or similar materials covering the roof and includes all materials used in securing the roof surface and all materials applied to or under the roof surface for moisture protection, as well as roof flashing.

"Roof coverings" includes any tarpaulins, canvas, plastic sheeting, or any other material used a temporary roof covering or substitute roof surface.

**All other terms and conditions of this policy remain unchanged.**



AUTHORIZED REPRESENTATIVE        DATE



# SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## MOLD EXCLUSION
## (PERSONAL LINES)

This policy does not provide coverage for any loss, damage, cost, claim, expense, "bodily injury," "property damage," or medical payments arising from or in any way involving, directly or indirectly, mold, fungi, mildew, spores, wet or dry rot, or similar organisms, regardless of cause.

The Company shall have no duty to investigate, defend, or indemnify any claim or "suit" seeking such damages.

_____    /    _____
AUTHORIZED REPRESENTATIVE                              DATE

UTS-292g (7-01)



SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EARTH OR LAND MOVEMENT EXCLUSION

This policy does not apply to "bodily injury"/**"bodily injury**," "property damage"/**"property damage**," "personal and advertising injury" or damages/"damages" caused, directly or indirectly or in whole or in part, by the movement, in any direction, of earth or land, regardless of:

1. The cause or source of such earth or land movement;

2. Whether such earth or land movement arises from natural or man-made forces or causes; or

3. Whether such earth or land movement occurs:

    a. Independently of;

    b. As a result of;

    c. In concurrence or connection; or

    d. In any sequence associated

    with any other natural or man-made forces, causes, events or operations.

Earth or land movement includes, but is not limited to, subsidence, settling, sinking, rising, slipping, falling away, caving in, shifting, expanding, contracting, dissolving, eroding, mudflow, sliding, tilting of land or earth, earthquakes, volcanic eruption and weather.

**All other terms and conditions remain unchanged.**

_____  _____ /
AUTHORIZED REPRESENTATIVE          DATE

Page 1 of 1

UTS-301g (11-05)

# SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## OCCUPANCY ENDORSEMENT

It is a condition of this policy that the premises described in the Declarations must be occupied. Therefore, we will not pay for loss or damage if the premises described in the Declarations:

1. Is not occupied by the "named insured" or with the consent of the "named insured" on the date coverage for that premises begins. However, for "newly acquired premises," we will not pay for loss or damage if the premises described in the Declarations is not occupied within thirty (30) calendar days of when you acquire ownership; and

2. Is vacant or not occupied by the "named insured" or with the consent of the "named insured" for more than sixty (60) consecutive calendar days immediately before the loss unless you provided written notification to us and we consented to the vacancy or unoccupancy, in writing, prior to the loss. However, for "newly acquired premises," this condition does not apply to a vacancy or unoccupancy that preceded the date you acquired ownership.

For the purposes of this endorsement, "newly acquired premises" means premises that have been owned by you for less than thirty (30) calendar days.

_____ /_____

AUTHORIZED REPRESENTATIVE          DATE

# SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EXISTING DAMAGE EXCLUSION

We will not pay for loss to covered property arising out of or resulting from "existing damage." Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. This exclusion applies whether or not the loss event results in widespread damage or affects a substantial area.

If, at the time of the loss, any loss or damages covered by a previous policy have not been fully and completely repaired, we will pay no more than the actual cash value for any loss or damage covered under this policy until the loss or damages covered by a previous policy have been fully and completely repaired.

For the purposes of this endorsement, "existing damage" means:

    **a.** Any loss or damage that occurred prior to the effective date of coverage for the property regardless of whether such damages were apparent at the time coverage began under this policy or at a later date; or

    **b.** Any loss or damages arising out of workmanship, repairs or lack of repairs arising from damage that occurred prior to the effective date of coverage for the property.

**All other provisions of the policy apply.**

_____    _____
AUTHORIZED REPRESENTATIVE                                        DATE

UTS-330s (4-16)                                     Page 1 of 1

# SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SCREENED ENCLOSURE—SPECIAL LIMIT FOR WIND OR HAIL DAMAGE

Our limit of liability for a screened enclosure for any single covered loss or damage caused by wind or hail will not be more than $20,000.

With respect to this endorsement, this special limit supersedes any other limit applicable to the covered property for loss or damage caused by wind or hail.

This special limit of liability is part of, and not in addition to, the Section I—Coverages shown on the Declarations applicable to the covered property.

For the purposes of this endorsement, screened enclosure means any structure, whether or not attached to the dwelling, enclosed by screen material on more than one side, otherwise open to the weather, and not constructed and covered by the same or substantially the same material as that of the dwelling and includes the screen material, frame, footings and supports and/or anchors.

_____
AUTHORIZED REPRESENTATIVE                                    DATE

Page 1 of 1

UTS-353g (6-07)

# SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## LIMITED ANIMAL LIABILITY COVERAGE FORM

This endorsement modifies insurance provided under the following:

**HOMEOWNERS 3—SPECIAL FORM
HOMEOWNERS 8—MODIFIED COVERAGE FORM
HOMEOWNERS 6—UNIT-OWNERS FORM
HOMEOWNERS 4—CONTENTS BROAD FORM**

To the extent that **Animal Liability** coverage is provided by this endorsement, the **ANIMAL EXCLUSION** contained in the Amendatory Endorsement, HOS-16g, attached to this policy does not apply.

We will have no duty to defend any suit against you seeking such damages unless coverage is provided by this endorsement.

For the premium charged and subject to the liability limits and the provisions as set forth in this endorsement and the Coverage Form, unless otherwise modified by this endorsement, we agree to afford coverage with respect to **Animal Liability.**

| LIMIT OF LIABILITY | COVERAGE |
|---|---|
| **$10,000 Each Occurrence, unless limit is stated below.** $ _____ | **ANIMAL LIABILITY** |

The following is added to **SECTION II—LIABILITY COVERAGE, Coverage E—Personal Liability:**

**Animal Liability Coverage**

If a claim is made or a suit is brought against any "insured" for damages because of "bodily injury" or "property damage" arising out of an "occurrence" by any animal at any "insured location" or any animal owned or in the care, custody and control of any "insured" at any location, other than the "insured location," to which this coverage applies, we will:

**(1)** Pay up to the Limit of Liability shown in this endorsement for the damages for which you are legally liable; and

**(2)** Provide a defense at our expense by counsel of our choice even if the suit is groundless, false, or fraudulent. We may investigate and settle any claims or suits that we decide are appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages arising out of an "occurrence" by any animal at any "insured location" or any animal owned or in the care, custody and control of any "insured" at any location equals the Limit of Liability shown above in this endorsement.

With respect to this endorsement, the following is added to **SECTION II—CONDITIONS, A. Limit Of Liability:**

Regardless of the number of "insureds," claims made or persons injured, the maximum amount payable for damages arising out of any one animal "occurrence" shall not exceed the Limit of Liability shown above in this endorsement. Damages include prejudgment interest awarded against the "insured."

All "bodily injury" or "property damage" arising out of an "occurrence" or from continuous or repeated exposure to the same general conditions shall be considered to be the result of one "occurrence."

**EXCLUSIONS:**

Liability coverage, under this endorsement or the policy to which this endorsement is attached, is specifically excluded for any "bodily injury" or "property damage" caused by:

    (a)  Attack, non-domesticated or guard dogs;

    (b)  The following breeds of dog: Rottweiler, Doberman Pinscher, Akita, Bullmastiff, wolf hybrids, Chow Chow and pit bull, including but not limited to, American Staffordshire Terrier, Staffordshire Bull Terrier or American Pit Bull Terrier;

    (c)  Any crossbreeds of animals in (b) above;

    (d)  Any exotic animal including but not limited to a lion, tiger or alligator; or

    (e)  Any animal with prior biting history,

whether owned or not owned by the "insured" or in the care, custody and control of any "insured" or at any location.

AUTHORIZED REPRESENTATIVE         DATE



## SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## POLLUTION LIABILITY EXCLUSION

**1.** This insurance does not provide coverage for any loss, damage, cost, claim, expense, "bodily injury," "property damage" or medical payments arising out of or in any way involving, directly or indirectly, the actual, alleged or threatened use, discharge, dispersal, seepage, migration, release or escape of any "pollutants":

**a.** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

**b.** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**c.** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(1)** Any insured; or

**(2)** Any person or organization for whom you may be legally responsible; or

**d.** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor.

**2.** This insurance does not provide coverage for any loss, cost or expense arising out of any:

**a.** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**b.** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants."

Subparagraphs **1.a.** and **1.d.** do not apply to any loss, damage, cost, claim, expense, "bodily injury," "property damage" or medical payments arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion:

"Pollutant" means any solid, liquid, gaseous or thermal irritant or contaminant, including, but not limited to smoke, vapor, soot, fumes, acids, alkalis, asbestos, chemicals and waste.

"Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

---

AUTHORIZED REPRESENTATIVE                     DATE

UTS-39s (4-11)

Underwritten by Scottsdale Insurance Company

**ENDORSEMENT NO.** _____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED | AGENT NO. |
|---|---|---|---|
| | | | |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## TOTAL OR CONSTRUCTIVE TOTAL LOSS PROVISION

It is understood and agreed that in the event of a total loss or constructive total loss under this policy, one hundred percent (100%) of the premium associated with the covered property that sustains the total loss or constructive total loss shall be earned in full and no return premium shall be due to the named insured.

_____  _____

AUTHORIZED REPRESENTATIVE                              DATE



eFiled Lee County Clerk of Courts Page 60

**SCOTTSDALE INSURANCE COMPANY®**

**ENDORSEMENT NO.** _____

Attached to and forming a part of
Policy No.   HOS1948855
Named Insured   YOLANDA VALLE AND ANA C BURGOS

Endorsement Effective Date  04-20-2022
12:01 A.M., Standard Time
Agent No.   09018

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SERVICE OF SUIT CLAUSE

It is agreed that in the event of the failure of the Company to pay any amount claimed to be due under this policy, the Company at the request of the Insured (or reinsured), will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give the Court jurisdiction. All matters which arise will be determined in accordance with the law and practice of the Court. In a suit instituted against any one of them under this contract, the Company agrees to abide by the final decision of the Court or of any Appellate Court in the event of an appeal. However, nothing in this endorsement constitutes a waiver of company's right to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States.

Pursuant to any statute of any state, territory or district of the United States of America which makes a provision, the Company will designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured (or reinsured) or any beneficiary arising out of this contract of insurance (or reinsurance).

The person named below is authorized and directed to accept service of process on behalf of the Company:

CHIEF FINANCIAL OFFICER

DEPARTMENT OF FINANCIAL SERVICES

200 EAST GAINES STREET

TALLAHASSEE, FL 32399-0301

Having accepted service of process on behalf of the Company, the person designated above is authorized to mail the process or a true copy to:

RECIPIENT NOT REQUIRED

_____   /   _____
AUTHORIZED REPRESENTATIVE                        DATE

UTS-9g (06-20)

Page 1 of 1
HO Service Copy



IN THE CIRCUIT COURT OF THE
20TH JUDICIAL CIRCUIT IN AND FOR
LEE COUNTY, FLORIDA

YOLANDA VALLE AND ANA C. BURGOS,

                    Plaintiffs,

v.

SCOTTSDALE INSURANCE COMPANY,

                    Defendant.

CASE NO.:

_____/

## PLAINTIFFS' FIRST SET OF INTERROGATORIES

      Plaintiffs, YOLANDA VALLE AND ANA C. BURGOS (collectively referred to hereafter as the "Insured"), pursuant to Rule 1.340 of the Florida Rules of Civil Procedure, propound the following First Set of Interrogatories upon Defendant, SCOTTSDALE INSURANCE COMPANY (the "Insurance Company"), to be answered in writing, under oath, within the time specified.

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that a true and correct copy of the foregoing was served via U.S. mail to: SCOTTSDALE INSURANCE COMPANY c/o The Florida Chief Financial Officer as RA, 200 E. Gaines Street, Tallahassee, Florida 32399-4201, on this 28th day of August 2023.

**Respectfully Submitted by,**
**Your Insurance Attorney, PLLC.**
2601 South Bayshore Drive 5th Floor
Coconut Grove, FL 33133
Phone No.: 1-888-570-5677
Fax: 1-888-745-5677
Email: YIA4@Yourinsuranceattorney.com
Secondary Email: Eservice@Yourinsuranceattorney.com

By: /s/ *Mariela Cano*
    Mariela Cano, Esq.
    Florida Bar No. 1015817

Page **2** of **18**

## DEFINITIONS AND INSTRUCTIONS

1.      Insert your answers in the space provided following each question.  If additional space is needed, so indicate in the space provided, prepare your answers on a separate paper, and attach the additional paper to your answers.

2.      Separately answer each interrogatory, and each subsection of each interrogatory. The term "you" and "your" means the party or parties to which this request is addressed, including its divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, accountants, attorneys, and all other persons acting or purporting to act on its behalf, as well as each partnership in which it is a partner.

3.      The terms "Insurance Company" or "Defendant" means the defendant in this action to which these Interrogatories are addressed, including its agents, attorneys, accountants, and all other persons acting or purporting to act on their behalf.  The terms "Insurance Company" or "Defendant" also includes the party's divisions, departments, subsidiaries, affiliates, predecessors, present or former officers, directors, owners, agents, attorneys, and accountants as well as each partnership in which it is a partner, and includes any other person, acting or purporting to act on its behalf.

4.      The terms "you" and "your" mean the party or parties to which these interrogatories are addressed, including its agents, attorneys, accountants, and all other persons acting or purporting to act on its behalf.

5.      The "Complaint" means the Complaint filed by the Insured(s) in this action.

Page **3** of **18**

6.     The term "Claim" means any statement, concept, assertion, idea, allegation, fact, law, rule, theory, observation, cause of action, or principle whatsoever, based upon which Plaintiff demands that she has suffered damages, or has a right to payment, as the result of any act or omission of Defendant.

7.     The terms "person" or "persons" mean any natural person, individual, proprietorship, partnership, corporation, association, organization, joint venture, firm, other business enterprise, governmental body, and group of natural persons or other entity, and includes any other person acting on behalf of a person.

8.     The term "contract" means any promise, or set or promises, which creates an obligation to do or not do a particular thing where there was meeting of the minds on a given proposition and an understanding and intention between the parties.

9.     The term "communication" means any information given, whether oral or written; any oral or written statement, conference, consultation, dialogue, colloquy, discussion, conversation, agreement, the sharing of knowledge by one with another, bargaining preparatory to making a contract or any expression of any kind.

10.    The term "document" means and includes any kind of written, typed, recorded or graphic matter, however produced or reproduced, of any kind or description, whether sent or received, and every record of every type, including originals, non-identical copies and drafts, and both sides of any documentation where information appears on both sides, and including but not limited to: letters, correspondence, memoranda, meeting transcripts or minutes, public filings or tax returns, papers, books, telegrams, bulletins, notices, announcements, instructions, charts, manuals, brochures, schedules, cables, telex messages, notes, notations, accountants' working

papers, transcriptions, agendas, reports, recordings of telephone or other conversations, of interviews, of conferences or of meetings, telephone messages, diaries, indices, books, reports, ledgers, working papers, invoices, worksheets, receipts, computer printouts, financial statements, schedules affidavits, contracts, canceled checks, statements, transcripts, magazine or newspaper articles, periodicals, releases and any and all drafts, alterations and modifications, changes and amendments of any of the foregoing, whether handwritten, printed or electronically prepared, filed or stored, affidavits, statements, summaries, opinions, reports, studies, analyses, evaluations, contracts, agreements, journals, statistical records, calendars, appointment books, diaries, lists, tabulations, sound recordings, computer print-outs, data processing input and output, microfilms, newspapers, magazines, books, periodicals or press releases, including information stored on any electromagnetic storage device, any written, printed, typed, recorded, or graphic matter, however produced or reproduced or stored to which you have or had access. "Document" shall also be deemed to include any summary of a document or documents called for hereafter.

11.   The term "all documents" means every document or group of documents as above defined that are known to you or that can be located or discovered by reasonably diligent efforts.

12.   As used herein the singular shall include the plural, the plural shall include the singular, and the masculine, feminine, and neuter shall include each of the other genders.

13.   The terms "and" as well as "or" shall be construed disjunctively as well as conjunctively as necessary to make the interrogatory inclusive rather than exclusive. The term "all" means "any and all." The term "each" means "each and every," and the term "every" means "each and every."

14.   The terms "refer" or "relate to" mean setting forth, pertaining to, memorializing,

constituting, embodying, discussing, analyzing, reflecting or otherwise concerning.

15.    The term "locate" or "location" means to state the present whereabouts of each Document and to identify the persons having possession, custody or control thereof.

16.    The term "to date" shall mean the date on which you answer these interrogatories.

17.    The term "including" means "including but not limited to".

18.    "Relating to" or "relevant to" means embodying, pertaining to, concerning, involving, constituting, comprising, reflecting, discussing, evidencing, referring to, consisting of, or having any logical or factual connection whatever with the subject matter in question.

19.    The term "Identify," when used with reference to a natural person, means state:

    (a)    his full name and address (or, if the present address is not known, his last known address).

    (b)    the full name and address of each of his employers, each corporation of which he is an officer or director and each business in which he is a principal.

    (c)    his present (or, if the present is not known, his last known) position and his position or positions at the time of the act to which the interrogatory answer relate, and

    (d)    such other information sufficient to enable Plaintiff to identify the person.

20.    "Identify," when used with reference to any entity other than a natural person, means:

    (a)    state the full name of the entity, the type of entity (e.g., corporation, partnership, etc.), the address of its principal place of business, its principal business activity, and if it is a corporation, the jurisdiction under the laws of which it has been organized and the date of such organization.

21.    "Identify," when used with reference to a document or written communication, means state:

Page **6** of **18**

(a)    its nature (e.g., letter, telegram, floppy disc, computer printout, memorandum, chart, report or study), date, author, date and place of preparation and the name and address of each addressee, if there is an addressee;

(b)    the identity of each signer to the document or communication;

(c)    the title or heading of the document or communication;

(d)    its substance;

(e)    its present (or, if the present is not known, the last known) location and custodian.

(f)    the identity of each person to whom a copy was sent and each date of its receipt and each date of its transmittal or other disposition by (I) respondent and (ii) any other person (naming such other person) who, at any time, either received, transmitted or otherwise disposed of such document or communication and each copy thereof;

(g)    the circumstances of each such receipt and each transmittal or other disposition, including identification of the person from whom received and the person to whom transmitted.

22.    "Identify," when used with reference to an oral transaction or oral communication, means state:

(a)    its nature (e.g., telephone call, conversation in person, etc.)

(b)    the date and place thereof.

(c)    the identity and address of each person participating therein, present during or witness to any part thereof.

(d)    identify each document in which such transaction or communication was recorded, described or referred to.

23.    "Identify" when used with reference to a lawsuit means state:

(a)    the caption of each lawsuit;

(b)    the court in which the lawsuit was filed;

Page 7 of **18**

(c)     the case number;

(d)     identify the parties, and

(e)     a brief summary of the nature of the claim or charge.

24.     "Identify" when used with reference to an administrative claim or charge means state:

(a)     identify the claimant or charging party;

(b)     the administrative office were filed;

(c)     the number assigned to identify the claim or charge, and

(d)     a brief summary of the nature of the claim or charge.

25.     "Identify," when used in any other context that is herein above set forth, means to describe the act, word, situation, event, etc. (and/or conduct, course of action of any nature whatsoever, including without limitation any failure to act, to engage in any conduct or to pursue any course of action), to be identified as fully as possible and identify each document or communication or act in which such act, word, situation, event, conduct or course of action, etc., was recorded, refers or relates to each answer, forms all or part of the basis for an answer; and/or corroborates and answer.

26.     You may, in lieu of identifying any Document or written communication, attach a true copy of each Document as an exhibit to the answers to these interrogatories.  On each occasion in which you choose to attach a Document as your answer to an interrogatory, identify the portion of the Document that answers the interrogatory.

27.     Identify each Document produced pursuant to an interrogatory by the paragraph number of the interrogatory in response to which it is produced and by the file from which the document was produced.

Page <strong>8</strong> of <strong>18</strong>

28.     If any of the information furnished in an answer to all or part of an interrogatory is not within your personal knowledge, identify each person who has personal knowledge of the information furnished in such answer and each person who communicated to you any part of the information furnished.

29.     If the answer to all or any part of the interrogatory is not presently known or available to you, include a statement to that effect, furnish the information now known or otherwise available to you, and respond to the entire interrogatory by supplemental answer, in writing, under oath, within ten days from the time the entire answer becomes known or available to you, but. in no event less than five days prior to trial.

30.     If you contend that it would be unreasonably burdensome to obtain and provide all of the information called for in response to any one of these interrogatories or any subpart thereof, then in response to the appropriate interrogatory or subpart:

(a)     set forth all such information that is available to you without undertaking what you contend to be an unreasonable burden;

(b)     state with particularity the grounds on which you contend that additional efforts to obtain such information would be unreasonably burdensome; and

(c)     describe with particularity the efforts made by you to secure such information, including, without limitation, the identity of all persons consulted, and files, records, and documents reviewed, and the identity of each person who participated in gathering such information, including the duration of time spent and nature of work done by each person.

31.     Unless your response to an interrogatory is complete when made, these interrogatories are continuing insofar as you are required to promptly make further or supplemental answers if new information is discovered and/or acquired by you between the date of your initial

Page **9** of **18**

answer and any time thereafter.

32.    If you claim in response to any request for production that any requested document is "privileged" and not subject to discovery, you shall so state expressly and, in addition, shall provide a privilege log, describing the nature of the documents, communications or things not produced or disclosed in a manner that, without revealing the information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

33.    If all of the information furnished in answer to all or part of an interrogatory is not within the personal knowledge of the affiant, identify each person to whom all or part of the information furnished is a matter of personal knowledge and each person who communicated to the affiant any part of the information furnished.

34.    To the extent precise and complete information cannot be furnished, such information as is available shall be supplied, together with an estimate of the precise and complete information.  Where such an estimate is given, the method employed in making the estimate shall be described.

Page **10** of **18**

## FIRST SET OF INTERROGATORIES

1.  Please state the name, title, current business address, and phone number of all persons answering or assisting with the answering of this set of interrogatories.

2.  Please state the date that the Insurance Company first received notice from the Insured(s), or on the Insured's behalf, for a claim of benefits under the Policy for property damages as described in the Complaint in this lawsuit.

3.  Please state how the Insurance Company became aware of the subject loss, identify the person(s) who initially reported the loss on the Insured's behalf, identify the person(s) who received that report on the Insurance Company's behalf and state the nature of the loss and damages as it was initially reported.

4.  Please state and any all correspondence sent by the Insurance Company to the Insured(s), or a representative on their behalf, after receiving notice of the loss. This includes denial letters, reservation of rights letters, letters requesting a sworn proof of loss, and any letters requesting an EUO of the Plaintiff.

5.  Please state any and all correspondence sent by the Insured(s), or a representative on their behalf, to the Insurance Company in reference to the claim at issue.

Page **11** of **18**

6.    Please state what the Insurance Company considers to be the cause of the damage at issue in the subject claim; also state the factual basis for your answer and identify any person(s) or documents that are the source of your information.

7.    Identify each person, by name, address, phone number and position, whom on behalf of the Insurance Company, inspected the Insured(s) Property in reference to the claim for benefits under the Policy, including his or her field of expertise, the date of each inspection, and all persons who attended the inspection(s).

8.    Please describe the observations of the field adjuster during his or her inspection of the Property. This Interrogatory contemplates any findings which may relate to coverage of the damage and the extent of the damage observed. If your response describes any document (including any estimates or reports) please submit these documents as part of your response.

9.    Identify each written estimate for repair or replacement, including the amount set forth in each estimate, which has been provided to the Insurance Company by the Insured(s) in reference to the Insured's claim for benefits under the Policy.

10.    Identify all persons (other than the Insurance Company) believed or known by you, your agents or attorneys to have knowledge concerning any of the issues raised by the pleadings, specifying the subject matter about which witnesses have knowledge and state whether you have obtained any statements (oral, written or recorded) from any of said witnesses, list the dates any such witness statements were taken, by whom any such witness were taken and who has the present possession, custody and control of any such statements.

11.    Identify all persons who, on the Insurance Company's behalf, have in any way participated in the investigation, evaluation, adjusting or handling of the claim involved hereto. Please specify the nature of the participation for each and every such person and give the time period during which they participated.

12.    Identify all persons not already identified in answers to the preceding interrogatories who are believed or known by you, your agents or your attorneys to have any knowledge concerning any of the issues in this lawsuit, and specify the subject matter about which the person has knowledge.

13.    Without regard to your contention(s) regarding causation or coverage, state what you consider to be the amount or extent of the damage at issue in the subject claim, including the estimated cost of fully remediating said damage (if known); also state the factual basis

Page **13** of **18**

for your answer and identify any person(s) or document(s) that are the source of your information.

14. Identify each written estimate for repair or replacement, including the amount set forth in each estimate, which has been provided to the Insurance Company by the Insured(s) in reference to the Insured's claim for benefits under the Policy.

15. Please describe whether the damage is covered by the Policy at issue. If it is not, please state the Policy condition which excludes this type of coverage.

16. For each decision that was made that the Insured's claim or any portion of the Insured's claim allegedly are not covered under the Policy, please state the date the Insurance Company first decided that the Insured's claim or any portion of the Insured's claim was allegedly not covered, the date you arrived at the conclusion, and the names and address and phone number and the dates of involvement of each and every person that knows any information concerning these matters.

17. Please describe all requests made by the Insurance Company upon the Insured(s) (i.e., requests for examination under oath, information, documents, sworn proofs of loss, etc.,) in reference to this claim and the dates made.

Page **14** of **18**

18.   With reference to each of your affirmative defenses raised in the lawsuit, please describe each and every fact upon which you rely to substantiate such affirmative defense, including identification of all witnesses to each such fact.

19.   Have you seen, and do you presently possess, any report resulting from an inspection or appraisal of the subject property performed at any time prior to the alleged date of the loss at issue in this action? If so as to each such report state the date it was prepared, identify the person(s) who prepared it, state the scope or purpose of the inspection and describe what, if anything, the report says about the condition of portions of the Property alleged by the Insured(s) to have sustained damage attributable to the subject loss.

20.   Do you allege any failure on the part of the Insured(s) to properly mitigate the subject damage so as to prevent further losses? If so state the amount of the loss you attribute to the failure to mitigate damage and describe with particularity the steps the Insured(s) could and should have taken to prevent further losses; also state the factual basis for your answer and identify any person(s) or document(s) that are the source of your information.

21.   Did the Insurance Company pay any benefits in connection with the subject claim? If so as to each such payment state the amount, the date it was issued and the specific aspect(s) of the loss it was intended to address; also state the total of all benefits paid for each coverage part.

22. Did the Insured(s) in any way fail to comply with applicable post-lost duties or other obligations under the Policy in connection with the subject claim? If so, identify any unfulfilled duties or obligations; also state the factual basis for your answer and identify any person(s) or document(s) that are the source of your information.

23. Was there a date prior to the filing of this action that you began anticipating litigation over the subject claim? If so, identify that date; also state the factual basis for your answer and identify any person(s) or document(s) that are the source of your information.

24. Please state how and when you notified the Insured(s) of your decision to decline paying the full amount of benefits sought by the Insured(s).

25. Please state if, how and when you notified the Insured(s) of the right to participate in mediation in accordance with Florida Statute §627.7015(2).

Page **16** of **18**

26. Please state if you retained an expert (i.e., engineer, general contractor, plumber, etc.) to assist in the adjustment of the loss, and provide his or her name and address, when they were retained, who authorized their retainer, and their opinions related to the loss.

eFiled Lee County Clerk of Courts Page 17

IN WITNESS WHEREOF, the Insurance Company has executed the foregoing answers to interrogatories and states that same are true and correct to the best of the undersigned's knowledge and belief.

_____

SCOTTSDALE INSURANCE COMPANY

By: _____

Title: _____

STATE OF FLORIDA                }
                                }
COUNTY OF _____}

      BEFORE  ME,  the  undersigned  authority,  personally  appeared _____, who is personally known to me or who has produced as identification, being first duly sworn according to law, deposes and says that he executed the foregoing Answers to Plaintiff's First Set of Interrogatories and that they are true and correct to the best of his/her knowledge and belief.

      IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of my office; in the County and State last aforesaid, this _____ day of August  2023.

IN THE CIRCUIT COURT OF THE
20TH JUDICIAL CIRCUIT IN AND FOR
LEE COUNTY, FLORIDA

YOLANDA VALLE AND ANA C. BURGOS,

                Plaintiffs,

CASE NO.:

v.

SCOTTSDALE INSURANCE COMPANY

                Defendant.

                                /

## **PLAINTIFFS FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**

Plaintiffs, YOLANDA VALLE AND ANA C. BURGOS (collectively referred to hereafter as the "Insured"), pursuant to Rule 1.350 of the Florida Rules of Civil Procedure, hereby request that Defendant, SCOTTSDALE INSURANCE COMPANY (the "Insurance Company"), make available for inspection and duplication, in response to each numbered paragraph, all documents specified herein which are in its possession, custody or control or in the possession, custody or control of its agents, accountants or attorneys. Defendant is requested to make such production within the time period prescribed either by the Florida Rules of Civil Procedure or by order of the Court, at the offices of **Your Insurance Attorney, PLLC., 2601 South Bayshore Drive, 5ᵗʰ Floor, Coconut Grove, Florida 33133.**

**I.**    **DEFINITIONS AND INSTRUCTIONS**

    1.    The terms "you", "your(s)", "yourselves", "defendant", and/or "Insurance Company" means the party or parties to which this request is addressed, and any agents, representatives, attorneys or other persons acting or purporting to act, on its behalf.

2.     The term "person" means any natural person, individual, proprietorship, partnership, corporation, association, organization, joint venture, firm, other business enterprise, governmental body, group of natural persons, or other entity.

3.     The "Complaint" means the Complaint filed by the Insured in this action.

4.     The term "document" shall mean any written or graphic matter and other means of preserving thought or expression and all tangible things from which information can be processed or transcribed, including the originals and all non-identical copies, whether different from the original by reason of any notation made on such copy or otherwise, including, but not limited to, correspondence, memoranda, notes, messages, letters, telegrams, teletype, telefax, bulletins, meetings or other communications, inter-office and intra-office telephone calls, diaries, chronological data, minutes, books, reports, studies, summaries, pamphlets, bulletins, printed matter, charts, ledgers, invoices, work-sheets, receipts, returns, computer printouts, prospectuses, financial statements, schedules, affidavits, contracts, canceled checks, statements, transcripts, statistics, surveys, magazine or newspaper articles, releases (and any and all drafts, alterations or modifications, changes and amendments of any of the foregoing), graphic or aural records or representations of any kind (including without limitation, photographs, microfiche, microfilm, videotape, records and motion pictures) and electronic, mechanical or electric records or representations of any kind (including without limitation, tapes, cassettes, discs and records).

Page **2** of **10**

5.    The term "all documents" means every document or group of documents as above defined that are known to you or that can be located or discovered by reasonably diligent efforts.

6.    The term "Insurance Company" shall refer to the Defendant in this action, its affiliates, subsidiaries, predecessors, successors, agents, attorneys and/or anyone else acting in its behalf.

7.    The term "communication(s)" means every manner or means of disclosure, transfer or exchange of information, whether in person, by telephone, mail, personal delivery or otherwise.

8.    As used herein, the singular shall include the plural, the plural shall include the singular, and the masculine, feminine and neuter shall include each of the other genders.

9.    The terms "and", "as well as" and "or" shall be construed disjunctively as well as conjunctively as necessary to make the interrogatory inclusive rather than exclusive.  The term "all" means "any and all."  The terms "each" and "every" means "each and every," the term "including" means "including without limitation."

10.    The terms "referring to" or "relating to" mean setting forth, pertaining to, memorializing, constituting, embodying, discussing, analyzing, reflecting or otherwise concerning.

Page **3** of **10**

11.     The terms "locate" or "location" means to state the present whereabouts of each document and to identify the person(s) having possession, custody or control thereof.

12.     The term "to date" shall mean the date on which you respond to this request.

13.     When producing the required documents, please keep all documents segregated by the file in which the documents are contained and indicate the name of the file in which the documents are contained and the name of the documents being produced.

14.     When producing the required documents, please produce all other documents that are clipped, stapled or otherwise attached to any requested document.

15.     In the event such file(s) or document(s) has (have) been removed, either for the purpose of this action or for some other purpose, please state the name and address of the person who removed the file, the title of the file and each sub-file, if any, maintained within the file, and the present location of the file.

16.     The words "and" and "or" shall be construed either conjunctively or disjunctively to bring within the scope of these requests any documents which might otherwise be construed to be outside their scope.

17.     If you claim that the attorney/client or any other privilege or the attorney's work product doctrine applies to any document, the production of which is called for by these requests, then for each such document, state its date, subject matter, author(s), recipient(s), present custodian and all past custodians, and such additional information concerning the claim of privilege or work product doctrine as will permit the adjudication of the propriety of the claim.

Page **4** of **10**

18.    If you contend that it would be unreasonably burdensome to obtain and provide all of the documents called for in response to any one of these requests, then in response to the appropriate request:

    a.    furnish each such document that is available to you without undertaking what you contend to be an unreasonable burden;

    b.    state with particularity the grounds on which you contend that additional efforts to obtain such documents would be unreasonably burdensome; and

    c.    describe with particularity the efforts made by you to secure such documents, including, without limitation, the identity of all persons consulted, and files, records, and documents reviewed, and the identity of each person who participated in gathering such documents, including the duration of time spent and nature of work done by each person.

19.    Unless otherwise indicated, all requests include the time period from the date of the Loss through the date you respond to this request.

20.    The term "Insured" shall refer to the Plaintiff(s), affiliates, predecessors, successors, agents, attorneys and/or anyone else acting in their behalf.

## II.    <u>LOST/DESTROYED DOCUMENTS</u>

If any document to be produced was, but is no longer, in your possession, custody or control and/or has been destroyed or is otherwise incapable of production or state: (a) the date, place and means of the destruction; (b) the name and address of each person deciding upon, participating in and having knowledge of the destruction; (c) the reason for the destruction; (d) if not destroyed, the reason why the document is incapable of production; and (e) the subject matter of the document.

Page **5** of **10**

### III.    <u>DOCUMENTS REQUESTED</u>

1.    A true and correct certified copy of the insurance policy provided by the Insurance Company to the Insured, for which this lawsuit is premised, including but not limited to, declaration sheet(s), all addendums and attachments.

2.    A true and correct copy of any and all statements, whether written, oral or recorded, in whatever fashion, taken of the Plaintiff, and/or their agents, servants, employees, etc. in regard to the subject matter of this litigation.

3.    A true and correct copy of any and all statements, whether written, oral or recorded in whatever fashion, taken of all independent witnesses or other persons by the Defendant with regard to the subject matter of this lawsuit.

4.    A list and/or other document showing the names, addresses, and telephone numbers of any and all witnesses whose statements have been taken, indicating their full legal name, resident addresses and telephone numbers in regard to the subject matter of this litigation and any statement of those witnesses.

5.    Any and all memoranda, notes, correspondence and any and all other documents or tangible things which, in any way, show or support to show any communications between the Defendant, and the Defendant's servants and/or employees on the one hand, and the Plaintiff, their agents, servants, employees, and/or attorneys on the other hand concerning the subject matter of this litigation.

6.    Each and every document, evidencing the name, address, and the position/relationship with the Insurance Company, of every individual who has visited or plans to visit the Property on behalf of the Insurance Company.

7.    Any and all correspondence or written communications from the Insurance Company to the Insured, which in any manner pertain to the Insured's loss as described in the Complaint.

Page <b>6</b> of <b>10</b>

8.     Any and all correspondence or written communications from the Insured, to the Insurance Company which in any manner pertains to the Insured's loss as described in the Complaint.

9.     Any and all photographs taken by the Insurance Company of the Property.

10.     Any and all photographs within the possession, custody and control of the Defendant, their agents or employees, taken at any time and that depicts the Property. As grounds for this paragraph, the Plaintiff would state that they cannot without undue hardship, obtain a substantial equivalent of these photographs.

11.     All documents containing information regarding a statement by the Insured at any time during the Insurance Company's handling of the Insured's loss, including adjuster notes, claim reports, interoffice memorandum, tape recordings and any transcripts or written statements from the Insured.

12.     The entire claim file in this matter, including any table of contents or summaries thereof, excluding documents which encompass the attorney/client privilege and/or work product doctrine. [Any and all documents excluded, please list documents with sufficient particularity such that the Court can conduct an in-camera inspection of same.]

13.     The entire underwriting file pertaining to the Property.

14.     Any homeowner's applications, supplemental applications, 4-Point inspection reports and photographs, uniform mitigation verification inspection forms and photographs, and other similar property inspection reports pertaining to the Property.

15.     All correspondence between the Insurance Company and any insurance agent or broker or underwriter related to the insurance involved herein.

16.     Copies of any and all documents by and between the Insurance Company and its investigators, insurance adjusters and appraisers relating to the subject matter of the Insured's Complaint which was not prepared in anticipation of litigation.

17.     Any and all expert reports, including but not limited to reports regarding cause and origin, estimates for repair and/or replacement, damage to the Insured's Property, mold and/or mildew and/or any other subject matter concerning this litigation prepared by any experts who will be utilized at the time of trial on behalf of the Defendant.

18.     A copy, at the Plaintiff(s) expense, of any photographs, videotape or film in the possession of the Defendant, its agents, employees or attorneys, which depict the Insured's Property or the scene or area where the alleged incident occurred.

19.     Any and all diagrams or sketches depicting the scene or area where the alleged incident occurred.

20.     Copy of any reports relating to any issue in this lawsuit which have been prepared by experts that you intend to call as witnesses in this cause.

21.     Copies of any and all photographs, recordings, charts, graphs, sketches, and any other tangible items or documentary evidence which you intend to use during the trial of this cause and which have not been produced in response to any of the preceding paragraphs of this Request for Production.

22.     A copy of any and all reports by any professional engineer, general contractor, plumber, electrician, roofer or other construction industry person hired by the Defendant to examine and/or evaluate any of the claims asserted by the Plaintiff.

23.     Copies of any and all correspondence to the Plaintiff from the Defendant relative to any of the claims asserted by the Plaintiff.

Page **8** of **10**

24.    Any and all documentation of any kind or nature, including photographs and/or evidence of any kind or nature to support the payment made by the Defendant for the subject loss.

25.    Any and all bills or estimates for repairs to the Property submitted to the Insurance Company by the Insured.

26.    Any and all checks paid to, or on behalf of the Insured, representing insurance coverage payment(s) for the loss.

27.    Any and all documentation relied upon by the Defendant, relative to each and every affirmative defense raised by the Defendant relative to coverage as well as the amount of loss.

28.    All reports of inspection(s) of the Plaintiff's premises, other structures, or personal property, done any time including prior to insuring same and before and after the losses suffered which are the subject matter of this litigation.

29.    Copies of any and all checks from the Defendant to the Plaintiff/Insured for any claims asserted in this lawsuit and/or in payment of the Plaintiff's/Insured's claim relative to the losses suffered which are the subject matter of this litigation.

30.    Any and all documentation of any kind or nature to support your denial or failure to pay the subject claim in the full amount claimed or in any amount beyond payments already issued relative to the losses suffered which is the subject matter of this litigation.

31.    The application of insurance signed by the insured.

32.    Any and all known rejections and/or limitations for coverage or endorsements forwarded and/or signed by the insured (i.e.), law and ordinance, stated value, co-insurance, and/or deductibles.

Page **9** of **10**

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via U.S. mail to:

SCOTTSDALE INSURANCE COMPANY c/o The Florida Chief Financial Officer as RA, 200

E. Gaines Street, Tallahassee, Florida 32399-4201, on this 28th day of August 2023.

> **Respectfully Submitted by,**
> **Your Insurance Attorney, PLLC.**
> 2601 South Bayshore Drive 5th Floor
> Coconut Grove, FL 33133
> Phone No.: 1-888-570-5677
> Fax: 1-888-745-5677
> Email: YIA4@Yourinsuranceattorney.com
> Secondary Email: Eservice@Yourinsuranceattorney.com
>
> By: /s/ *Mariela Cano*
>      Mariela Cano, Esq.
>      Florida Bar No. 1015817

Page **10** of **10**

IN THE CIRCUIT COURT OF THE
20TH JUDICIAL CIRCUIT IN AND FOR
LEE COUNTY, FLORIDA

YOLANDA VALLE AND ANA C. BURGOS,

                Plaintiffs,          CASE NO.:

v.

SCOTTSDALE INSURANCE COMPANY,

                Defendant.

                             /

## PLAINTIFFS' FIRST REQUEST FOR ADMISSIONS

Plaintiffs, YOLANDA VALLE AND ANA C. BURGOS (collectively referred to hereafter as the "Insured"), pursuant to Rule 1.370 of the Florida Rules of Civil Procedure, propound the following First Request for Admissions upon Defendant, SCOTTSDALE INSURANCE COMPANY (the "Insurance Company"), to be answered in writing, under oath, within the time specified.

1.      Admit that the insurance agreement that serves as the subject matter of this litigation was in effect at the time of the loss.

2.      Admit that the insurance agreement that serves as the subject matter of this litigation provided coverage for the specific losses alleged in this action.

3.      Admit that the Insured(s) timely notified the Insurance Company of the loss that brought rise to this action.

4.      Admit that the Insured(s) has complied with all policy conditions to receive benefits under the subject policy of insurance.

5.      Admit that the Insured(s) has complied with all post-loss conditions precedent to the filing of this lawsuit.

6.      Admit the Insurance Company inspected the Property.

7. Admit the Insurance Company inspected the damage.

8. Admit the Insurance Company did not request a sworn statement in proof of loss from the Insured(s).

9. Admit the Insurance Company did not request an examination under oath (EUO) from the Insured(s).

10. Admit the Insurance Company did not request a recorded statement from the Insured(s).

11. Admit the Insurance Company did not retain an expert to assist in its investigation during the adjustment of the loss.

12. Admit the Insurance Company received documentation from the Insured(s) in support of his/her loss.

13. Admit the Insurance Company received an estimate of damage from the Insured(s).

14. Admit the Insurance Company received invoices, estimates, or receipts evidencing repairs made to the Property.

15. Admit the Insured(s) made repairs to the Property following the loss.

16. Admit the field adjuster who inspected the Property is not an expert in determining cause of damage.

17. Admit the Insurance Company did not properly indemnify the Insured(s).

18. Admit the Insured(s) kept an accurate record of his/her repairs and expenses.

19. Admit the Insured(s) mitigated the damage to the Property.

20. Admit the Insured(s) made reasonable and necessary repairs to the Property following the loss.

21. Admit that the Insurance Company insured the property in the condition the

property existed at the time of the Policy's inception.

      22.    Admit the damage was caused by a covered loss.

      23.    Admit that the Insurance Company is required to pay the Insured's attorney's fees

and costs pursuant to <u>Florida Statute Section 627.428</u>, if the Insured(s) prevails.

**<u>CERTIFICATE OF SERVICE</u>**

      I HEREBY CERTIFY that a true and correct copy of the foregoing was served via U.S.

mail to: SCOTTSDALE INSURANCE COMPANY c/o The Florida Chief Financial Officer as

RA, 200 E. Gaines Street, Tallahassee, Florida 32399-4201, on this 28th day of August 2023.

                        **Respectfully Submitted by,**
                        **Your Insurance Attorney, PLLC.**
                        2601 South Bayshore Drive 5th Floor
                        Coconut Grove, FL 33133
                        Phone No.: 1-888-570-5677
                        Fax: 1-888-745-5677
                        Email: <u>YIA4@Yourinsuranceattorney.com</u>
                        Secondary Email: <u>Eservice@Yourinsuranceattorney.com</u>

                        By: <u>/s/ *Mariela Cano*</u>
                          Mariela Cano, Esq.
                          Florida Bar No. 1015817



**SERVED WITH COMPLAINT**

  **RE: YOLANDA VALLE AND ANA C. BURGOS v.  SCOTTSDALE INSURANCE COMPANY**


To Whom It May Concern:

  At this time we would like to request that your office provide five or more dates to coordinate the deposition of your corporate representative(s), in connection with the above-referenced matter within **one hundred and sixty (160) days**. I have attached the proposed areas of inquiry for your convenience. Please note this is not an exhaustive list and additional areas of inquiry may be necessary depending upon additional discovery and responses to questions asked at the deposition. Please forward all dates to **yia4@yourinsuranceattorney.com.**

  Should you have any questions, please do not hesitate to contact us. In the meantime, I look forward to your anticipated prompt cooperation in this matter. Failure to provide dates within the prescribed time may necessitate the filing of a Motion to Compel.

      Kind Regards,

      **YOUR INSURANCE ATTORNEY, PLLC**
      **MARIELA E. CANO, Esq.**

IN THE CIRCUIT COURT OF THE
20TH JUDICIAL CIRCUIT IN AND FOR
LEE COUNTY, FLORIDA

YOLANDA VALLE AND ANA C. BURGOS,

                Plaintiff,

CASE NO.:

v.

SCOTTSDALE INSURANCE COMPANY,

                Defendant,

                              /

## PROPOSED NOTICE OF TAKING DEPOSITION DUCES TECUM

**PLEASE TAKE NOTICE** that the undersigned attorneys will take the following

deposition at the place, date and time indicated below:

| NAME | DATE | TIME | PLACE |
|---|---|---|---|
| **Corporate Representative with knowledge pursuant to Fla. R. Civ. P. 1.310(b)(6)** | | | |

> **In accordance with the Americans with Disabilities Act of 1990, persons needing a special accommodation to participate in this proceeding should contact the offices of the undersigned at 305-444-5969**

Pursuant to Rule 1.310(b)(6) of the Florida Rules of Civil Procedure, you are hereby requested to designate one or more officers, directors, managing agents or other persons who consent to testify on behalf of the parties being deposed as the persons having the most knowledge concerning the area of the subject matter described on **Schedule A** attached hereto.

Upon oral examination before a commissioner appointed by the Court, a Notary Public, or any other officer authorized to administer oaths by the laws of the State of Florida, who is neither a relative nor employee of such attorney or counsel and who is not financially interested in this action. The deposition will continue from day to day until completed. The deposition is being taken for purposes of discovery and for use as evidence in this case, for use at trial, or for such other purposes as are permitted under the Florida Rules of Civil Procedure.

**The deponent is to bring at the above time and place the following documents listed on the attached Schedule B.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served to: SCOTTSDALE INSURANCE COMPANY, on the _____ day of August 2023.

**Respectfully Submitted by,**
**Your Insurance Attorney, PLLC.**
2601 South Bayshore Drive 5th Floor
Coconut Grove, FL 33133
Phone No.: 1-888-570-5677

Fax: 1-888-745-5677
Email: YIA4@Yourinsuranceattorney.com
Secondary Email: Eservice@Yourinsuranceattorney.com

By: /s/ *Mariela Cano*
    Mariela Cano, Esq.
    Florida Bar No. 1015817

## SCHEDULE A

1.  The allegations set forth in the Complaint.

2.  The Insurance Policy entered into between the Insurer and the Insured as referenced in
    the Complaint.

3.  All facts related to the Insurer's involvement in the Insured's claim as referenced in the
    Complaint.

4.  All facts related to communications between the Insured and agents of the Insurer as it
    relates to the allegations set forth in the Complaint.

5.  The adjustment and claim handling of the instant claim alleged in the Complaint.  .

6.  The dollar value of the Insured's damages.

7.  All facts and information supporting your defenses to the Plaintiff(s) claim for
    insurance proceeds as alleged in the Complaint.

8.  All facts and information supporting Your Answer and Affirrmative Defenses.

9.  All facts and information supporting any defense or exclusion of coverage under the
    Insurance Policy entered into between Plaintiff and Defendant as referenced in the
    Complaint.

**SCHEDULE B**

1. Please bring a copy of all documents in your possession for the instant Claim as defined
   in the Complaint that are not protected by a claimed privilege. If you are not producing
   documents pursuant to this Schedule B request because you are claiming a privilege
   please provide a privilege log. If a document is not produced and not referenced on a
   privilege log we will assume it does not exist.

9/6/2023 8:11 AM FILED LEE COUNTY CLERK OF COURT

IN THE COUNTY COURT OF THE TWENTIETH JUDICIAL CIRCUIT IN AND FOR LEE
COUNTY, FLORIDA                                                        CIVIL ACTION

CASE NO: 23-CA-010008

VALLE, YOLANDA et al
   Plaintiff
vs
SCOTTSDALE INSURANCE COMPANY
   Defendant
_____/

## STANDING ORDER IN CIRCUIT CIVIL CASES IN THE
## TWENTIETH JUDICIAL CIRCUIT

PURSUANT to Florida Rule of Civil Procedure 1.200(a), Florida Rule of Judicial
Administration 2.545, and Administrative Order 1.13 (as amended) entered by the Chief Judge of
this Circuit, the parties are ordered to adhere to the following information and procedures
applicable to civil lawsuits:

1. **SERVICE OF THIS ORDER.**  The Plaintiff is directed to serve a copy of this order
with each Summons issued in this case.  One copy of this Order is to be filed with the Clerk of
the Circuit Court with proof of service.  The Plaintiff shall pay the appropriate statutory clerk's
fees on copies for each Standing Order issued and attached to the Summons.

2. **CIVIL CASE MANAGEMENT SYSTEM.**  The Supreme Court of Florida has
established guidelines for the prompt processing and resolution of civil cases.  This Court has
adopted a case management system to help meet those guidelines.  In contested cases (other than
residential foreclosures, involuntary commitment of sexually violent predators, Extraordinary
Writs, 90 day Notice of Medical Malpractice Claim, and Administrative Appeals), the parties are
required to participate in the case management system.  The Court will issue a Case Management
Plan after 150 days of the filing of a case in the event the parties have not submitted an Agreed
Case Management Plan that has been approved by the Court.  However, if it becomes necessary
to amend the court-issued Case Management Plan, the parties may submit an Agreed Case
Management Plan, subject to approval by the Court, or if the parties cannot agree on an
Amended Plan, the parties may request a case management conference.  The form of the Agreed
Case Management Plan may be accessed at the Court's website at:
https://www.ca.cjis20.org/Programs/Civil-Case-Management/generalcivil.aspx. If a case
management conference is scheduled, attendance by trial counsel and those parties who are not
represented by counsel is mandatory.  Agreed Case Management Plans are to be submitted
to Lee County Civil Case Management by email in Word format to
LeeCircuitCivilCM@ca.cjis20.org or if no access to email then mailed to Lee County
Civil Case Management 1700 Monroe Street Fort Myers Fl. 33901. DO NOT file with the
Clerk of Court.

3. **ALTERNATIVE DISPUTE RESOLUTION (ADR).**  ADR provides parties with an
out-of-court alternative to settling disagreements.  The Court requires the parties to participate in

Rev. 7/1/2023

9/6/2023 8:11 AM FILED LEE COUNTY CLERK OF COURT

IN THE COUNTY COURT OF THE TWENTIETH JUDICIAL CIRCUIT IN AND FOR LEE
COUNTY, FLORIDA                                                    CIVIL ACTION

ADR prior to trial.  Mediation is mandatory unless the parties agree to another form of ADR.
Mediation is a conference at which an independent third party attempts to arrange a settlement
between the parties. The Court, at its discretion, may order the case be referred to Non-Binding
Arbitration.  Non-Binding Arbitration is the process in which the court refers a case to a
registered arbitrator, or panel of arbitrators, who will hear evidence and make an award which
may become a final judgment if a Motion for Trial De Novo is not timely filed pursuant to
Fla.R.Civ.P. 1820(h).

        4. **FAILURE TO PROSECUTE.** The Court will issue a Notice of Intent to Dismiss a
case if there is no record of activity within a ten (10) month period of time.

        5. **RULES OF PROFESSIONALISM.**  The Twentieth Judicial Circuit has adopted
Administrative Order 2.20, which sets forth standards of professional courtesy and conduct for
all counsel practicing within the Circuit and self-represented litigants.  The Court requires that all
familiarize themselves and comply with Administrative Order 2.20.  Administrative Order 2.20
may be viewed on the Court's website at: http://www.ca.cjis20.org/web/main/ao_admin.asp


        **DONE AND ORDERED** in Chambers at Fort Myers, Lee County, Florida.


                                          *Michael T. McHugh (electronically signed)*
                                          Administrative Circuit Judge


        ****Original on file in the office of the Circuit Court Administrative Judge, Lee County**


Rev. 7/1/2023

IN THE CIRCUIT COURT OF THE 20TH JUDICIAL CIRCUIT, IN AND FOR LEE COUNTY, FLORIDA

YOLANDA VALLE and
ANA C. BURGOS,

CASE NO.: 23-CA-010008

    Plaintiffs,

v.

SCOTTSDALE INSURANCE COMPANY,

    Defendant.

_____/

## NOTICE OF APPEARANCE AND DESIGNATION OF E-MAIL ADDRESSES

Please take notice that Sean W. Rolland, Esquire of Wilson Elser Moskowitz Edelman & Dicker, LLP, hereby enters his appearance as counsel for Defendant, SCOTTSDALE INSURANCE COMPANY.

He designates the following e-mail addresses, pursuant to Florida Rule of Judicial Administration 2.516, for service of all documents required to be served in this proceeding:

| | |
|---|---|
| **Primary E-mail Address:** | sean.rolland@wilsonelser.com |
| **Secondary E-mail Address:** | kathleen.benavides-lopez@wilsonelser.com |
| **Secondary E-mail Address:** | christina.balderson@wilsonelser.com |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of September, 2023, I electronically filed the foregoing pursuant to the Supreme Court of Florida Order No. AOSC13-49 with the Clerk of Court by using the Florida Courts E-Filing Portal who will send notice of this electronic filing to: **MARIELA CANO, ESQUIRE**, YOUR INSURANCE ATTORNEY, PLLC, YIA4@yourinsuranceattorney.com and Eservice@yourinsuranceattorney.com (Attorneys for Plaintiffs).

                                     */s/ Sean W. Rolland*
                                       SEAN W. ROLLAND, ESQUIRE
                                       Florida Bar No. 112151
                                       sean.rolland@wilsonelser.com
                                       kathleen.benavides-lopez@wilsonelser.com

christina.balderson@wilsonelser.com
Wilson Elser Moskowitz Edelman & Dicker, LLP
111 North Orange Avenue, Suite 1200
Orlando, FL 32801
(407) 203-7599 - Phone
(407) 648-1376 - Facsimile
Attorneys for Defendant, SCOTTSDALE INSURANCE
COMPANY

SWR:cb

IN THE CIRCUIT COURT OF THE 20TH JUDICIAL CIRCUIT, IN AND FOR LEE COUNTY, FLORIDA

YOLANDA VALLE and
ANA C. BURGOS,

CASE NO.: 23-CA-010008

     Plaintiffs,

v.

SCOTTSDALE INSURANCE COMPANY,

     Defendant.

_____/

## DEFENDANT'S MOTION FOR ENLARGEMENT OF TIME TO RESPOND TO PLAINTIFFS' COMPLAINT

Defendant, SCOTTSDALE INSURANCE COMPANY ("Defendant"), pursuant to Rule 1.090, *Florida Rules of Civil Procedure*, hereby files Defendant's Motion for Enlargement of Time to Respond to the Complaint filed by Plaintiffs, YOLANDA VALLE and ANA C. BURGOS ("Plaintiffs"), and in support thereof states as follows:

1.     On or about September 8, 2023, Defendant was served with a Complaint by Plaintiffs purportedly seeking benefits under an insurance policy for a claim of damages to their property.

2.     Pursuant to the applicable Florida Rules of Civil Procedure, the deadline for Defendant to file a response to Plaintiffs' Complaint is September 28, 2023.

3.     Counsel for Defendant recently received a copy of the claims file materials, and requires additional time to evaluate the materials and determine defenses applicable in this case.

4.     Florida Rule of Civil Procedure 1.090 (b) states in pertinent part:

**(b) Enlargement.** When an act is required or allowed to be done at or within a specified time by order of court, by these rules, or by notice given thereunder, for cause shown the court at any time in its discretion (1) with or without notice, may order the period enlarged

> if request therefore is made before the expiration of the period
> originally prescribed or as extended by a previous order . . .

5.　　Therefore, Defendant seeks an extension of thirty (30) days to respond to Plaintiffs' Complaint.

6.　　This Motion for Enlargement of Time is not being filed for delay or any other improper purpose and the extension is necessary so that the issues can be properly determined and any and all defenses can be asserted by Defendant.

WHEREFORE, Defendant, SCOTTSDALE INSURANCE COMPANY, respectfully requests this Honorable Court enter an order granting Defendant an enlargement of time to respond to Plaintiffs' Complaint no later than thirty (30) days from the date of the Court's Order Granting Defendant's Motion for Enlargement of Time to Respond to Plaintiffs' Complaint.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of September, 2023, I electronically filed the foregoing pursuant to the Supreme Court of Florida Order No. AOSC13-49 with the Clerk of Court by using the Florida Courts E-Filing Portal who will send notice of this electronic filing to: **MARIELA CANO, ESQUIRE**, YOUR INSURANCE ATTORNEY, PLLC, YIA4@yourinsuranceattorney.com and Eservice@yourinsuranceattorney.com (Attorneys for Plaintiffs).

　　　　　　　　　　　　　　　/s/ Sean W. Rolland
　　　　　　　　　　　　　　　SEAN W. ROLLAND, ESQUIRE
　　　　　　　　　　　　　　　Florida Bar No. 112151
　　　　　　　　　　　　　　　sean.rolland@wilsonelser.com
　　　　　　　　　　　　　　　kathleen.benavides-lopez@wilsonelser.com
　　　　　　　　　　　　　　　christina.balderson@wilsonelser.com
　　　　　　　　　　　　　　　Wilson Elser Moskowitz Edelman & Dicker, LLP
　　　　　　　　　　　　　　　111 North Orange Avenue, Suite 1200
　　　　　　　　　　　　　　　Orlando, FL 32801
　　　　　　　　　　　　　　　(407) 203-7599 - Phone
　　　　　　　　　　　　　　　(407) 648-1376 - Facsimile
　　　　　　　　　　　　　　　Attorneys for Defendant, SCOTTSDALE INSURANCE
　　　　　　　　　　　　　　　COMPANY

SWR:cb